## SECURITY MORTGAGE COMPANY v. POWERS, TRUSTEE IN BANKRUPTCY.

No. 32.   Argued October 12, 1928.—Decided December 10, 1928.

150

*Mr. John E. Benton* for petitioner,

*Mr. Walter S. Dillon* for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The Florida Furniture Company was adjudicated bankrupt in the Southern District of Florida. Among its assets was real estate in Georgia, acquired by purchase from the Hanson Motor Company. An ancillary receiver appointed in the Northern District of Georgia took possession of this property. It was subject to a loan deed (see *Scott* v. *Paisley,* 271 U. S. 632) given to secure notes of the Hanson Company for $90,000 and interest, which the Furniture Company had assumed and agreed to pay. The trustee in bankruptcy applied for leave to sell the property free from the lien. The secured notes were held at the time of the adjudication and thereafter by the Security Mortgage Company. An order was served upon it to show cause why the trustees' application should not be granted. It appeared, but made no opposition. Leave to sell was granted, preserving to the lien creditor its rights in the proceeds of the sale. Under that order, the property was sold; and the Mortgage Company became the purchaser at a price exceeding the amount of all liens. It asked to be allowed as a credit against the purchase price, among other things, the sum of $9,442.40 for attorney's fees.

The secured indebtedness was represented by a principal note and ten coupon interest notes. Each note contained the following clause: "With interest after maturity until paid at eight per cent per annum with all costs of collection, including ten per cent as attorney's fees, if collected by law or through an attorney at law." So far as appears, the Mortgage Company did not employ

an attorney until after it had been served with the order to show cause, on the trustee's application for leave to sell the property. There had been no default before the adjudication. Thereafter, a coupon interest note matured and was not paid. Before the leave to sell was granted, the Mortgage Company, because of this default, gave notice to the Hanson Company of its election to declare the principal note due. It also gave to the Hanson Company notice in writing that it intended to bring suit in the City Court of Atlanta and to claim the attorney's fees, unless the the indebtedness was paid. Twelve days later, the Mortgage Company brought such a suit against the Hanson Company, without attempting to join the bankrupt, the receiver, or the trustee. It does not appear that notice of the acceleration of the principal note, or of the intention to sue, or of the bringing of the suit against the Hanson Company was given to the bankrupt, the trustee, or the receiver. Prior to the sale of the property by the trustee, judgment was entered against the Hanson Company for the principal and interest and for $9,442.40 attorney's fees. That judgment declared those amounts to be a special lien upon the property.

Over the objection of the trustee, the claim for attorney's fees was allowed by the referee as a credit against the purchase price. The District Judge disallowed it without writing an opinion. The certificate of the referee set forth the facts; and the parties stipulated that the "certificate contains all of the facts necessary to a clear understanding of the issue made on appeal to the Circuit Court" of Appeals. That court affirmed the judgment, 21 F. (2d) 965. This Court granted a writ of certiorari, 276 U. S. 610. Whether disallowance of the credit for attorney's fees was error is the sole question for decision.

Under § 67 of the Bankruptcy Act the trustee takes property subject to valid liens existing at the time of the institution of the bankruptcy proceedings. The Mortgage Company makes no contention that the judgment in the state court establishes as *res judicata* either the claim for attorney's fees or the existence of the lien therefor. It concedes that by no action in the state court, and by no act of the Mortgage Company, could a lien be attached to the property after it had passed to the trustee, see *Murphy* v. *Hofman Co.*, 211 U. S. 562; and that the bankruptcy court must determine for itself whether a lien exists and the amount of the indebtedness secured thereby. See *Hebert* v. *Crawford*, 228 U. S. 204; *Chicago Board of Trade* v. *Johnson*, 264 U. S. 1, 11. The proceedings in the state court are relied upon merely to show compliance with the condition which § 4252 of the Georgia Code makes a prerequisite to the enforcement of any contract to pay attorney's fees. See *Stone* v. *Marshall & Co.*, 137 Ga. 544; *Turner* v. *Peacock*, 153 Ga. 870, 879.

The provision of the Georgia Code is this: " Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, are void, and no court shall enforce such agreement to pay attorney's fees, unless the debtor shall fail to pay such debt on or before the return day of the court to which suit is brought for the collection of the same: Provided, the holder of the obligation sued upon, his agent, or attorney notifies the defendant in writing, ten days before suit is brought, of his intention to bring suit, and also the term of the court to which suit will be brought." The validity of the lien claimed by the Mortgage Company for attorney's fees must be determined by the law of Georgia; for the contract was there made and was secured by real estate there situate. *Humphrey*

v. *Tatman,* 198 U. S. 91. See *Benedict* v. *Ratner,* 268 U.
S. 353, 359. The construction of the contract for attor-
ney's fees presents, likewise, a question of local law. See
*Farmers Bank* v. *Fed. Reserve Bank,* 262 U. S. 649, 660.
Whether the liability is, under the circumstances, enforce-
able against the proceeds of the sale raises federal ques-
tions peculiar to the law of bankruptcy. The character
of the obligation to pay attorney's fees presents no ob-
stacle to enforcing it in bankruptcy, either as a provable
claim or by way of a lien upon specific property. The
obligation is held to be enforceable by action *in personam*
in the federal courts for Georgia, *Perry* v. *John Hancock
Life Insurance Co.,* 2 F. (2d) 250.

The Mortgage Company contends that, although the
collection of the note was made not through the suit in
the state court, but through the uncontested sale in the
bankruptcy court, it should be deemed a collection " by
law or through an attorney " within the meaning of the
contract. Many decisions of the courts of the State lend
support to that contention. They hold that attorney's
fees are recoverable, not like costs as an incident of the
suit, but as a part of the principal debt; [1] that by the
giving of notice of intention to sue, the commencement
of the suit and the failure of the debtor to pay on or
before the return day, a vested right arises which a later
payment of the debt could not affect; [2] that the liability
for attorney's fees is not dependent upon the collection
having been made through a suit brought in compliance
with the Code; [3] and that it may be enforced against the

---

[1] *Royal* v. *Edinburgh-American Co.,* 143 Ga. 347, 350; *Evans* v.
*Atlantic Nat'l Bank,* 147 Ga. 621.

[2] *Harris* v. *Powers,* 129 Ga. 74, 86–88; *Mount Vernon Bank* v.
*Gibbs,* 1 Ga. App. 662; *Valdosta R. R. Co.* v. *Citizens Bank,* 14 Ga.
App. 329, 332–333; *Equitable Life Assurance Society* v. *Patillo,* 37 Ga.
App. 398.

[3] *Guarantee Trust and Banking Co.* v. *American National Bank,*
15 Ga. App. 778.

land held as security; although the debtor has become insolvent, *McCall* v. *Herring*, 116 Ga. 235, 238–239; or the property has passed to an administrator, *Harris* v. *Powers*, 129 Ga. 74; or to a receiver, *Guarantee Trust and Banking Co.* v. *American National Bank*, 15 Ga. App. 778, 782–784.[4] The trustee does not question that the Hanson Company became personally liable for the attorney's fees, despite the proceedings taken in bankruptcy. His objections go only to the enforcement of the liability against the proceeds of the property sold.

*First.* The trustee contends that the credit for the attorney's fees was precluded by provisions of the Bankruptcy Act. He insists that, at the time of the adjudication, the liability was contingent, since at the time there had not been any default; and under § 63 of the Bankruptcy Act a contingent claim is not provable.[5] But the Mortgage Company does not seek to prove the claim in bankruptcy. It asks to have it allowed as a part of the principal debt, which is secured by a lien upon the property sold. The federal courts for Georgia have, in a series of cases, refused to permit this to be done, on the ground that the liability was contingent at the time of the adjudi-

[4] In *Equitable Life Assurance Society* v. *Pattillo*, 37 Ga. App. 398, it was held that the holder of a secured note providing for attorney's fees might, at the same time, sue at law *in personam* and proceed to foreclose under a power of sale; and, that if the debt was not paid before the return day of the suit, he might retain the attorney's fees from the proceeds of a sale made under the power before entry of the judgment. It is only when the default in payment was due to the creditor's failure to perform a duty to realize upon collateral held that the right to attorney's fees is denied. Compare *Rylee* v. *Bank of Statham*, 7 Ga. App. 489, 495–498.

[5] For cases to that effect involving similar contracts for attorney's fees under the laws of other States see: *In re Roche*, 101 Fed. 956 (Texas); *In re Jenkins*, 192 Fed. 1000 (So. Car.); *British & American Mortgage Co.* v. *Stuart*, 210 Fed. 425, 430 (Ala.). Compare *Gugel* v. *New Orleans National Bank*, 239 Fed. 676 (La.); *First Savings Bank & Trust Co.* v. *Stuppi*, 2 F. (2d) 822 (N. M.).

cation. See *In re Weiland,* 197 Fed. 116; *In re Ledbetter,* 267 Fed. 893; *In re Hotel Equipment Co.,* 297 Fed. 842, 845; *In re Stamps,* 300 Fed. 162. Compare *In re Gimbel,* 294 Fed. 883. We find nothing in the Bankruptcy Act to justify such a refusal. The lien was not inchoate at the time of the adjudication. It had already become perfect when the principal note and the loan deed securing it were given. Property subject to a lien to secure a liability still contingent at the time of bankruptcy is not discharged from the lien by the adjudication. The secured obligation survives; and if it is that of a third person is usually unaffected by the bankruptcy. When by the happening of the event the contingent liability becomes absolute, the lien becomes enforceable [6] though this occurs after the adjudication.

*Second.* The trustee contends that allowance of the credit is barred by § 67d, because the liability for attorney's fees not having become absolute until after the adjudication, is excluded by the provision which allows outstanding liens " to the extent of such present consideration only." The contention has support in *In re Mobile Chair Co.,* 245 Fed. 211.[7] But it was rejected, and we think properly, in *In re Rosenblatt,* 299 Fed. 771. The contingent obligation to pay attorney's fees was a part of the original transaction. The consideration for the lien was not the attorney's services, but the $90,000 advanced by the Mortgage Company; and this was a present consideration. See *Bank of Lumpkin* v. *Farmers Bank,* 35 Ga. App. 340.

*Third.* The trustee contends that under the Bankruptcy Act the claim must be disallowed, because, by the

---

[6] See *In re Stoddard Bros. Lumber Co.,* 169 Fed. 190, 195; *In re Farmers' Supply Co.,* 170 Fed. 502, 506–507; *In re Sullivan,* 21 F. (2d) 834; *Estes* v. *Estes & Sons,* 24 F. (2d) 756.

[7] See in accord, *Matter of Quertinmont,* 10 A. B. R. (N. S.) 47 (Referee, W. Va.).

Georgia Code, the contract was void unless and until the statutory condition had been complied with; that, consequently, at the time of the adjudication, no valid contract existed; and that the bankrupt's estate can not be affected by a validation, equivalent to the making of a wholly new contract, occurring thereafter. This seems to be the view taken by the federal courts for Georgia. See *In re Stamps*, 300 Fed. 162, 164. The question depends primarily upon the construction of § 4252 of the Georgia Code, and thus primarily upon the local law. The language of the statute lends some color to the trustee's contention. No case in a court of the State has been called to our attention in which consideration of this contention was had. Those which discuss the significance of the word "void," as used in this section, throw little light upon it.[8] Despite the language employed, we are of opinion that the Legislature did not contemplate validation of a void contract, but merely added a statutory condition to the written contract to pay attorney's fees.

*Fourth.* Two further possible objections to the allowance of the attorney's fees are suggested. The first is lack of notice to the trustee of the action of the Mortgage Company which resulted in the judgment in the state court recovered against the Hanson Company. The principal note was payable in 1930, with a provision for acceleration in case of default. The Mortgage Company's election to declare it immediately due, for default in payment of the interest coupon, was exercised after it had been made a party to the trustee's application for leave to sell—a proceeding which would presumably result in payment of the debt. The referee did not find whether

---

[8] Compare the statement in *Johnson* v. *Globe Co.*, 11 Ga. App. 485, that prior to notice the right to attorney's fees is "embryonic only" with that in *Mount Vernon Bank* v. *Gibbs,* 1 Ga. App. 662, 666, that upon payment before return day "the obligation to pay attorney's fees becomes void."

158

or not the Mortgage Company gave the trustee notice of its election to accelerate the maturity of the principal; or notice that the suit had been brought. The Mortgage Company then knew that the bankrupt had agreed with the Hanson Company to pay the note and that the property had become primarily liable for the debt. If it failed to give the trustee notice of the election and of the intention to bring suit, we think that it is not entitled to the credit for attorney's fees. For, if he had been notified, the trustee might have arranged to pay the note on or before the return day of the suit against the Hanson Company. The purpose of the Georgia statute is clear. It is to protect the debtor, in spite of default, from any liability for attorney's fees, unless he fails to pay after the lapse of the ten days from receiving notice of intention to sue and such further time as must intervene between the commencement of the suit and the return day. *Harris* v. *Powers,* 129 Ga. 74, 88; *Edenfield* v. *Bank of Millen,* 7 Ga. App. 645, 648. The Legislature cannot have intended that the creditor should be able to impose the additional liability for attorney's fees, without giving to the real debtor the notice and opportunity to pay which the statute contemplated that a debtor should have. This objection also involves primarily a question of local law; and no decision directly in point has been found. But decisions applying the Georgia statute to somewhat similar situations support this conclusion.[9]

*Fifth.* The remaining suggested objection is this: The trustee asserts that, at the time of the commencement of the suit against the Hanson Company, it was absolutely insolvent and without assets; and that the sole purpose of bringing the suit against it was to increase, by the amount of the attorney's fees, the claim payable in bankruptcy

[9] *Loftus* v. *Alexander,* 139 Ga. 346; *Chamlee* v. *Austin,* 150 Ga. 279.

under the lien. It is settled that the mere fact of the debtor's insolvency under the state law does not prohibit the rendering of a judgment for attorney's fees. " Such a condition," says the court in *Harris* v. *Powers,* 129 Ga. 74, 86, " may make it more difficult, and sometimes impossible, for a creditor to realize upon his judgment; but he is not debarred from the privilege of obtaining it." The case at bar presents, however, additional facts. It is asserted that the suit against the Hanson Company was brought, not for the purpose of collecting the debt, but solely for the purpose of enhancing the amount which was obtainable without suit, through the lien upon the proceeds of the property. If this is true, the statutory provision designed for the protection of the debtor was employed solely as a means of oppression. We will not assume, in the absence of a decision by a Georgia court, that the Legislature intended to permit such use.

Neither of the two objections to the allowance of the credit last discussed appear to have been considered by the referee or by either of the lower courts. Nor does the certificate of the referee contain the specific findings of fact necessary to support either of them. The Court of Appeals rests its affirmance of the judgment denying the credit for attorney's fees upon provisions of the Bankruptcy Act which we hold are not applicable, or upon a construction of the Georgia statute which we deem erroneous. Under these circumstances, the decree of the Circuit Court of Appeals must be reversed with directions to remand the case to the District Court. But the District Court shall be directed to treat the stipulation concerning the certificate as failing to include elements essential to a final adjudication; to determine whether or not either of these two objections, which we hold meritorious if sustained by the facts, is so sustained; and if so sustained, the credit for attorney's fees shall be disallowed. If the

160

District Court finds that neither of said objections is so sustained, credit for the attorney's fees shall be allowed, for the amount due and secured by the lien, in conformity with this opinion.[10]

*Reversed.*

---

[10] Compare *Estho* v. *Lear,* 7 Pet. 130; *Chicago, Milwaukee &c. Ry.* v. *Tompkins,* 176 U. S. 167, 179–180; *United States* v. *Rio Grande Irrigation Co.,* 184 U. S. 416; *Lincoln Gas & Electric Light Co.* v. *Lincoln,* 233 U. S. 349, 364–365; *Swift & Co.* v. *Hocking Valley Ry. Co.,* 243 U. S. 281, 289; *Hammond* v. *Schappi Bus Line,* 275 U. S. 164, 172.