UNITED STATES *v.* PIONEER AMERICAN INS. CO.

5-2732                                         357 S. W. 2d 653

Opinion delivered June 4, 1962.

*Louis F. Oberdorfer,* Asst. Attorney General, *Lee A. Jackson, Joseph Kovner,* and *David I. Granter,* Dept. of Justice, Washington, and *Charles M. Conway,* U. S. Atty., for appellant.

*Bethell & Pearce* and *Donald P. Callaway,* for appellee.

ED. F. McFADDIN, Associate Justice. This appeal challenges a decree which held that an attorney's fee in the mortgage foreclosure suit was superior to the federal tax lien. Events and dates are as follows:

1. On May 24, 1956, The Development Company, Inc., for value received, executed a note for $20,000.00 secured by a mortgage on real estate in Sebastian County, Arkansas. The mortgage was duly filed and recorded on June 7, 1956; and, before maturity, the said indebtedness, together with the mortgage, was transferred to the appellee, Pioneer American Insurance Company of Dallas, Texas (hereinafter called "Pioneer"). The note bound the maker, ". . . in the event of default herein and of the placing of this note in the hands of an attorney for collection, or this note is collected through any court proceedings, to pay a reasonable attorney's fee." The mortgage securing the note provided that if the grantor should fail to pay any interest or installment of principal when due, then, at the option of the holder, all of the indebtedness secured by the said mortgage should become due for all purposes and there could be foreclosure in a court of competent jurisdiction.

2. By deed recorded March 18, 1958, The Development Company, Inc. sold the mortgaged real estate to Ocie A. Rogers and Florence W. Rogers, his wife, who assumed the mortgage and indebtedness held by Pioneer.

3. The Rogers failed to make the monthly payment in October, 1960, and all subsequent payments; and on March 24, 1961, Pioneer filed foreclosure for the balance due on the debt and interest, and also for a reason-

able attorney's fee. The United States of America was made a defendant in the foreclosure suit because of the federal tax liens that had been filed against Ocie A. Rogers and Florence W. Rogers, the said liens having been filed on the dates and in amounts as follows:

| | |
|---|---|
| November 29, 1960 | $1,776.65 |
| January 30, 1961 | 1,567.14 |
| April 14, 1961 | 1,288.96 |
| July 17, 1961 | 1,606.87 |
| October 3, 1961 | 1,148.69 |

4. The United States Government, by answer admitted its lien to be subordinate to the mortgage and interest, but claimed its tax lien to be superior to the attorney fee.

On November 11, 1961, the Chancery Court entered a decree of foreclosure which determined priority as between Pioneer and the United States Government, as follows:

"The lien of United States of America is therefore found to be subordinate to the lien of plaintiff, Pioneer American Insurance Company, for all amounts it secures, including principal of the note and interest thereon; . . . and attorney's fees fixed by the court; . . ."

The decree in the Chancery Court also contains these statements which are submitted by appellant on this appeal:

"The United States of America has in open court conceded that its lien is subordinate to the lien of plaintiff, Pioneer American Insurance Company, insofar as principal and interest of said plaintiff's note are concerned, . . . The United States of America claims, however, that its lien is prior to the lien of plaintiff, Pioneer American Insurance Company, so far as same secures . . . attorney's fee . . ."

So much for dates and background information. The United States Government (hereinafter sometimes called

"Appellant") has appealed from so much of the Chancery decree as adjudged the attorney's fee allowed Pioneer in the sum of $1,250.00 to be superior to the United States' tax lien claims[1]; and the appellant relies on U. S. Code Annotated, Title 26, § 6321 *et seq.*; and also, *inter alia*[2], the following cases: *U. S.* v. *New Britain,* 347 U. S. 81, 98 L. Ed. 520, 74 S. Ct. 367; *U. S.* v. *Security Trust & Savings Bank,* 340 U. S. 47, 95 L. Ed. 53, 71 S. Ct. 111; *U. S.* v. *Bond* (4th Cir.), 279 F. 2d 837 (*certiorari* denied by U. S. Supreme Court, 364 U. S. 895, 5 L. Ed. 2d 189, 81 S. Ct. 220); *U. S.* v. *Christensen* (9th Cir.), 269 F. 2d 624; and *In Re New Haven Clock & Watch Co.,* (2d Cir.), 253 F. 2d 577.

We recognize the power of the United States Government to legislate as to the rights to be accorded its tax liens; and we recognize the power of the United States Supreme Court to be the final arbiter in such cases as this. Nevertheless, we do not consider any of the cases relied on by the appellant as completely decisive of the case at bar because of the matters that we now mention:

(A) Section 68-102 Ark. Stats., which is a part of the Negotiable Instruments Law,[3] states: "The sum payable is a sum certain . . . although it is to be paid: . . . (5) With costs of collection or an attorney's fee in case payment shall not be made at maturity."

(B) The Arkansas Statute on attorneys' fees is Act No. 350 of 1951 (now found in § 68-910 Ark. Stats.),

---

[1] There were other parties in the foreclosure suit and other lien claims involved; but there is no occasion to give details as to these matters because the only issue on this appeal by the United States Government is, as stated in its brief: "Federal tax liens take priority over a mortgagee's lien for an attorney's fee incurred in a foreclosure proceeding, where the federal liens were recorded prior to the time the lien for an attorney's fee became choate."

[2] Both sides have favored us with briefs containing scores of cases, all of which have been studied by us; but we list here those which are most strongly relied on by the appellant, and which have factual situations most similar to the case at bar.

[3] By Act No. 185 of 1961 Arkansas adopted the Uniform Commercial Code, effective January 1, 1962; and § 85-3-106 Ark. Stats. contains the provision of the Uniform Commercial Code similar to § 68-102 Ark. Stats. above quoted.

and reads: "A provision in a promissory note for the payment of reasonable attorneys' fees, not to exceed ten per cent (10%) of the amount of principal due, plus accrued interest, for services actually rendered in accordance with its terms is enforceable as a *contract of indemnity.*" (Emphasis supplied.)

(C) The United States Government conceded, in open court below, and conceded in its brief filed in this Court, that its tax lien is subordinate to the mortgage and interest in full to date of payment. In accordance with the foreclosure decree, the mortgaged property was sold, and with the consent of the United States Government, Pioneer received the balance of its principal and all interest due to the date of such payment; and a further sum is now held in the Court to await the result of this litigation.

(D) The default in the payment of the note and mortgage held by Pioneer occurred in *October 1960*; and it was not until *November 1960* that the first tax lien of the United States Government was filed in this case.

We regard Paragraphs (A) to (D) above as, together, being sufficient to distinguish the case at bar from those relied on by the United States Government, as heretofore listed. In the New Britain case,[4] the United States Supreme Court spoke of the requirement that the lien must be "choate". The recording of the mortgage in 1956 put the world on notice that if there should be a default in payment of the note an attorney's fee would be added. There was such a default in October 1960 and the holder of the note, immediately upon such default, became entitled to enforce the contract of indemnity; and all of this was prior to any lien filed by the United

[4] *U.S.* v. *New Britain,* 347 U.S. 81, 98 L. Ed. 520, 74 S. Ct. 367.

[5] Attorneys for Pioneer have quoted to us the language of the U. S. Supreme Court in the case of *Security Mtg. Co.* v. *Powers,* 278 U.S. 149, 49 S. Ct. 84, 73 L. Ed. 236, as regards when a lien becomes choate: "The lien was not inchoate at the time of the adjudication. It had already become perfect when the principal note and the loan deed securing it were given . . . When by the happening of the event the contingent liability becomes absolute, the lien becomes enforceable, though this occurs after the adjudication."

States Government. So we are definitely of the opinion that the right for attorney's fee became choate before the United States Government filed its lien claim.

We have carefully studied the case of *U. S.* v. *Bond,*[6] and also the Virginia statutes and cases[7] regarding attorneys' fees in foreclosure of mortgages since the case arose in Virginia; and we fail to find any statute in Virginia that is comparable to our Act. No. 350 of 1951 which says that the contract to pay attorneys' fee is a *contract of indemnity.* Such a statute in this State makes a difference between the Bond case and the case at bar.

In the case at bar the United States has conceded all the time that Pioneer is entitled to its *full debt and interest to date of payment.* Unless Pioneer gets its attorney's fee, it will not receive its full debt and interest, because the attorney's fee will have to be paid by Pioneer out of its debt and interest. So when the United States Government concedes—as it must under the adjudicated cases—that the prior mortgage is entitled to payment in full, it cannot expect the mortgagee to leave its attorney unpaid in the face of a statute which says that the attorney's fee is a contract of indemnity. In 27 Am. Jur. 471, "Indemnity" § 22, in discussing a contract of indemnity against liability, the text quotes the holdings: "In all actions on bonds of indemnity it must appear that the condition of the bond was broken, but, such fact appearing, the obligee is not obliged to wait until he is compelled to discharge the debt; *he may bring an action for a full recovery the moment the first breach happens in failing to perform the condition of the bond.* (Emphasis supplied.)

There is another point that favors Pioneer's claim for attorney fees and which was not discussed in any of the cases cited and relied on by the United States Government in the case at bar; and that is the matter of unjust enrichment. We find no holding directly in point,

---

[6] *U. S.* v. *Bond* (4th Cir.), 279 F. 2d 837.
[7] Among others, there are: *Colley* v. *Summers,* 119 Va. 439, 89 S. E. 906; and *Cox* v. *Hagan,* 125 Va. 656, 100 S. E. 666.

but we do find the general rules discussed in American Law Institute's Restatement of the Law, "Restitution" § 103 et seq. on the topic on "Protection of Property". Pioneer employed attorneys, foreclosed the mortgage, caused a sale of the property and its conversion into money. The United States Government seeks to receive the money before the payment of the fee due the attorneys, whose efforts brought the money into Court. To allow such would violate the rules against unjust enrichment. While attorneys love their work, they do not work entirely for love. Someone must pay the fee: Pioneer employed attorneys after a default which had occurred before the United States ever filed a tax lien; and Pioneer proceeded to reduce the mortgaged property to cash. Under such facts the United States Government should not be allowed to assert a claim superior to the payment of the fee that Pioneer has paid to cause the mortgaged property to be reduced to cash and the proceeds readied for distribution, as they now are.

We are firmly of the opinion that in a court of equity Pioneer was entitled to prevail for its attorney's fee; and we therefore affirm the decree of the Sebastian Chancery Court.

HARRIS, C. J., dissents.

CARLETON HARRIS, Chief Justice (Dissenting). I cannot agree with the Majority opinion, for I am unable to distinguish the facts in the case at bar from those in *U. S.* v. *Bond,* 279 F. 2d 837 (C. A. 4th), and *In re New Haven Clock & Watch Co.,* 253 F. 2d 577 (C. A. 2nd). I do not consider that discussion of those cases is necessary, for brief quotations from the opinions will suffice to explain my views. In *Bond,* the court said:

"For the same reasons, we must subordinate to priority of the federal tax liens the claim for an attorney fee paid by Perpetual in protection of the lien of its mortgage. The fee was incurred long after the attachment of the federal tax lien; and at the time of the execution of the mortgage and the creation of the debt

secured thereby, the future existence or amount of such attorney fee, was, at best, speculative and uncertain.''

In *New Haven,* that court said:

''The Bank sought an order in the District Court including an award of reasonable attorney's fees because the Clock Company, in the assignment contract, agreed 'to reimburse the Bank for any and all legal and other expenses incurred in and about the checking, handling and collection of the accounts hereby assigned to the Bank and the preparation and enforcement of any agreement relating thereto.' The Government, in its oral argument before this Court and in its brief, opposed this claim on the ground that the United States, acting pursuant to Sections 3670 and 3671 of the Internal Revenue Code of 1939, and Sections 6321 and 6322 of the Internal Revenue Code of 1954, 26 U. S. C. §§ 6321, 6322, had a tax lien on the proceeds of the assigned accounts which was prior to the 'inchoate' lien of the Bank. Since the amount of the Bank's lien for attorney's fees was unknown at the time of the Clock Company's petition for reorganization, this lien was 'inchoate' in the sense used to determine its priority as against a United States tax lien. *United States* v. *City of New Britain,* 347 U. S. 81, 84, 74 S. Ct. 367, 98 L. Ed. 520. Thus, the Government's lien is superior to the claim for attorney's fees if the United States has complied with the aforementioned provisions of the Internal Revenue Codes and in addition has filed the notice of the lien as required * * *.'' Here, there is no dispute that the lien was properly filed and recorded.

The Majority apparently depend in large measure upon the fact that our statute provides that a reasonable attorney's fee is enforceable as a contract of indemnity. In my view, this provision lends no weight to the position taken by the Majority. The sole question here is *when* the insurance company's lien for attorneys' fees came into existence, *i.e.,* did the attorneys' fee become choate before the Government filed its lien claim? There

was a default on the note in October, 1960,[1] and the Majority state:

". . . the holder of the note, immediately upon such default, became entitled to enforce the contract of indemnity; and all of this was prior to any lien filed by the United States Government. So we are definitely of the opinion that the right for attorney's fee became choate before the United States Government filed its lien claim."

The question, in my view, is not when the company became entitled to enforce the provision for an attorney's fee, but rather, when it actually did enforce it. I emphatically disagree with the statement of the Majority, for I cannot see that the company was due to add the attorney's fee *immediately upon default*. Debtors frequently are a few days late in making payments, but no one would contend that this permits a note holder to add an attorney's fee. The default in payments on this note occurred in October, but I daresay that if Rogers had subsequently made the October payment, and the other payments, no foreclosure suit would have been filed. Certainly, if delinquent payments had been made and accepted by the company, it would not be contended that Pioneer should be permitted to add an attorney's fee. In such event, there would have been no occasion to enforce any contract for indemnity, for there would have been no loss.

While the default occurred in October, 1960, *the foreclosure suit was not filed until March, 24, 1961*. The claim for attorney's fee can only be enforced by court action, and though I am primarily of the opinion that an attorney's fee would not have priority over the Government's tax liens until it had been definitely fixed by the court, (prior to the recording of the liens) still, if that be error, then certainly I can see no possible priority for the attorney's fee until a suit is filed asking for the fee. Both the filing of the complaint, and the order fixing

---

[1] The first two federal tax liens were recorded in November, 1960, and January of 1961.

the fee, occurred after the recording of the federal tax liens. The note provides:

"The undersigned also agree(s) that in the event of default herein and of the placing of this note in the hands of an attorney for collection, or this note is collected through any court proceedings, to pay a reasonable attorney's fee."

Our statute, quoted by the Majority, also provides that the attorney's fee is enforceable "for services actually rendered." Therefore, under the language of both the note and the statute, *a default in payment is not sufficient to enable the note holder to add an attorney's fee;* services actually rendered by an attorney (generally the filing of a suit) are necessary. But, if it be said that an attorney could render service in trying to collect payments on the note before actually instituting any suit, I point out that this record is silent as to *when* this matter was placed in the hands of the attorneys for Pioneer. *There is no evidence that appellee's attorneys rendered any service relative to collection of the note prior to the filing of the foreclosure complaint.*

The Majority state that to allow the Government to recover the amount sought would "violate the rules against unjust enrichment." I personally find no merit in this contention. The Government has its attorneys, and I am quite sure, wolud have been only too glad to have brought its own proceeding for sale of the property to satisfy the tax liens if such action would have given it priority over appellee.

While I have commented to some extent relative to statements in the Majority opinion, this dissent is primarily based on the holdings in the *Bond* and *New Haven* cases, a reading of which persuades me that the lien for attorneys' fee did not become choate until a definite, fixed amount was allowed by the court. As previously stated, this, of course, was long after the recording of the federal tax liens.

I accordingly feel that the Government should prevail in its contention, and respectfully dissent.