THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, A CORPORATION OF THE STATE OF NEW YORK, PLAINTIFF-APPELLANT, v. ALBERT BAGIN (A/K/A ALBEN BAGIN), *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued December 15, 1964—Decided July 6, 1965.

Mr. *Frank W. Hoak* argued the cause for the plaintiff-appellant (*Mr. Donald B. Jones,* attorney).

Mr. *Edward J. Turnbach,* Assistant United States Attorney, argued the cause for the defendant-respondent United States of America (*Mr. David M. Satz, Jr.,* United States Attorney, attorney; *Mr. Martin G. Holleran,* Assistant United States Attorney, on the brief).

PER CURIAM. The plaintiff, The Equitable Life Assurance Society of the United States, held a $30,000 first mortgage and an accompanying bond which were executed, on December 19, 1960, by the defendants Albert Bagin and Erika Bagin, his wife. Upon default, the plaintiff filed a foreclosure complaint setting forth the execution of the bond and mortgage, the execution by the Bagins of a second mortgage dated December 19, 1960 and held by William Hawkey, and the filing by the United States, on March 21, 1962, of notice of a $7,748.91 federal lien for withholding taxes. See 26 *U. S. C. A.* §§ 6321–6323. The defendant Hawkey filed an answer joining in the plaintiff's demand for judgment and demanding that the amount due on his mortgage be fixed and that the lands be sold to satisfy that amount as well as the amount due to the plaintiff. The defendant United States filed an answer in which it requested that its encumbrance be reported on.

On motion, the Chancery Division determined that the plaintiff was entitled to the sum of $30,052.14 plus interest, and also to taxed costs which amounted to $630.30, inclusive of the fee of $425.52 provided for in *R. R.* 4:55–7(c); the sum due the defendant Hawkey was determined to be $5,104 plus interest, and taxed costs which amounted to $25. The United States expressly conceded the priority of the mortgages including principal, interest and taxed costs, exclusive, however, of the $425.52 item. With respect to that item it contended that the plaintiff was not entitled to priority under the principles expressed by the Supreme Court in *United States v. Pioneer American Ins. Co.*, 374 *U. S.* 84, 83 *S. Ct.* 1651, 10 *L. Ed. 2d* 770 (1963), and *United States v. Buffalo Savings Bank*, 371 *U. S.* 228, 83 *S. Ct.* 314, 9 *L. Ed. 2d* 283 (1963). The Chancery Division agreed with its contention, and entered an order of priority of payment of liens which deferred the $425.52 item until after payment of both mortgages and the lien of the United States. Without awaiting the sale of the property, the plaintiff appealed to the Appellate Division and before argument there we certified.

After hearing oral argument we directed that the sale of the property be proceeded with. This has been done and the net sum (after payment of the fees and commissions due to the sheriff and clerk) now in hand for distribution is $39,193.31. The plaintiff contends that its priority includes the $425.52 item and that consequently the order of distribution should be as follows: to the first mortgagee, $30,052.14 plus interest of $2,830.58 plus taxed costs of $630.30—total $33,513.02; to the second mortgagee, $5,104 plus interest of $485.12 plus taxed costs of $25—total $5,614.12; to the United States the balance of $66.17. On the other hand, the United States contends that the first mortgagee's priority as against it does not include the $425.52 item and that distribution should be made by providing "for a priority adjustment fund consisting of the principal and interest, plus costs, of the two prior mortgages to be distributed in accordance with state law, but the surplus, if any, representing the Taxpayer's

interest in the property at the time the federal tax lien arose, should be applied to the federal tax lien in full." Under this approach the fund would consist of $33,087.50 for the first mortgagee, $5,614.12 for the second mortgagee, and a surplus of $491.69 for the United States, with the State remaining at liberty, however, to decide under its own laws that the $425.52 be paid to the plaintiff by reducing the second mortgagee's judgment in that amount.

Taxed costs are traditional and incidental allowances which are of some help in defraying portions of the heavy expenses of litigation incurred by the prevailing parties. They are of long usage and are generally provided for by statutes and court rules. In the federal courts they include (28 *U. S. C. A.* § 1920) such items as fees of the clerk, marshal, court reporter and witnesses, printing costs, and "attorney's and proctor's docket fees." This last item is specifically governed by 28 *U. S. C. A.* § 1923 and, while the amounts listed there are meager, they occasionally add up to more significant sums. See, *e.g.*, *State of Missouri v. Illinois*, 202 *U. S.* 598, 26 *S. Ct.* 713, 50 *L. Ed.* 1160 (1906), where the taxed costs included $720 for "[s]olicitors' fees, *viz.*, $20 for attendance at final hearing and $2.50 for each deposition taken and admitted in evidence." Under various federal statutory provisions further allowances for attorneys' fees may be made and included in the taxed costs. See Peck, "Taxation of Costs in United States District Courts," 42 *Neb. L. Rev.* 788, 799 (1963); 6 *Moore's Federal Practice par.* 54.71 (*2d ed.* 1953).

In the state courts, taxed costs are generally dealt with in similar fashion. See 20 *Am. Jur. 2d, Costs*, § 5 *et seq.* (1965); 4 *Utah L. Rev.* 501 (1955); 5 *N. H. Bar J.* 114 (1963); 42 *Mich. State Bar J.* 12 (Nov. 1963). In our own State there are governing statutes and court rules (*N. J. S.* 22A:2–1 *et seq.*; *R. R.* 4:55–6) some of which deal specifically with mortgage foreclosure proceedings. See *U. S. Pipe, etc. v. United Steelworkers of America*, 37 *N. J.* 343, 355 (1962). Thus *N. J. S.* 22A:2–10 provides for allowance in

the taxed costs of $50 for the attorney's "drawing of papers" in foreclosure actions, R. R. 4:55–9 provides that in such actions legal fees and charges incurred in procuring title searches may be included in the taxed costs, and R. R. 4:55–7(c) provides that in such actions, allowance for legal services in the taxed costs shall be calculated at 3% on the first $5,000 adjudged to be due the plaintiff, 1½% on the excess over $5,000 and up to $10,000, and 1% on the excess over $10,000. While this is designed towards further defrayal of some of the plaintiff's actual foreclosure costs, it is still not aimed at full compensation for the legal expenses incurred by the plaintiff; the percentages are fixed at low levels (2A *Waltzinger, New Jersey Practice* 28 (1954)), are not related to the actual extent of the legal services performed by the plaintiff's attorney, and are thus applicable even where the foreclosure is contested or complex. While R. R. 4:55–7(c) is part of our current court rules, its counterparts may be found in early statutes and rules of the former Court of Chancery. See *L.* 1902, *c.* 158, § 91; *Kocher's Chancery Practice* 74 (1913). The allowance under the rules in the taxed costs is, of course, part and parcel of the plaintiff's judgment in foreclosure. See R. R. 4:55–8.

When Congress directed that the government's lien under section 6321 "shall not be valid as against any mortgagee" it did not specifically spell out the elements of the mortgagee's claim entitled to priority. See 26 *U. S. C. A.* § 6323. But it seems entirely clear that at least principal, interest and costs were within the congressional contemplation. That much is not disputed by the government which set forth in its brief that here "the first and second mortgages were recorded before the federal tax lien was recorded and hence the principal and interest, plus costs of these mortgages are superior to the federal tax lien." And in a report submitted to this Court by the government following the sale of the foreclosed property it set forth the first mortgagee's priority as including principal, interest and taxed costs amounting to $204.78. This latter sum consisted of filing fees, sheriff's

fees and mileage, and $50 under *N. J. S.* 22A:2–10 for drawing pleadings plus $100.78 search fees under *R. R.* 4:55–9. While the government excluded the sum of $425.52 due the first mortgagee under *R. R.* 4:55–7(c), we fail to find any sensible basis for differentiating that item from the other items acknowledged by the government. Thus the $50 item represents services by the plaintiff's attorney as might the $100.78 item. Without impairing their true character as traditional and incidental costs, the State could readily and conveniently have provided for larger sums, *e.g.*, by statutory or rule provision allowing individual amounts for each of the pleadings filed or each of the steps taken. In their aggregate these could well have exceeded those provided by the modest percentages fixed in *R. R.* 4:55–7(c) and, for present purposes, it would appear wholly immaterial which of these courses the State has chosen in dealing with its allowance of taxed costs.

The government continues its reliance on *Buffalo Savings, supra,* and *Pioneer, supra,* but these cases involved different situations. In *Buffalo Savings* the mortgage was executed in 1946, the government's lien was filed in 1953, and thereafter in 1957 and 1958 local liens for unpaid real estate taxes attached to the property. On foreclosure, the trial court directed that the local real estate taxes be paid as part of the expenses of sale prior to the satisfaction of the government's lien. This was reversed by the Supreme Court in a *per curiam* which pointed out that "the state may not avoid the priority rules of the federal tax lien by the formalistic device of characterizing subsequently accruing local liens as expenses of sale." 371 *U. S.*, at *p.* 229; 83 *S. Ct.*, at *p.* 315, 9 *L. Ed. 2d,* at *p.* 284. Here we are not dealing with any formalistic device or any circumvention of federal priority but with a traditional and incidental allowance by way of taxed costs for services which were truly part of the plaintiff's actual legal costs and expenses in foreclosing its mortgage. Indeed it may be assumed that its actual foreclosure expenses here exceeded its taxed costs. Its efforts in pursuing the foreclosure through

sale have benefited not only the mortgagees but the government as well. In a fair sense, it has produced a fund from which the government will receive a return without any expenditure on its own part. It would therefore appear that not only are the significant legal considerations unfavorable to the government's position here but so also are the equitable ones. See *Washington Const. Co. v. United States of America,* 75 *N. J. Super.* 536 (*Ch. Div.* 1962); *Smith v. Smith,* 78 *N. J. Super.* 28 (*Ch. Div.* 1963); but *cf. United States v. Pioneer American Ins. Co., supra,* 374 *U. S.,* at *p.* 92, 83 *S. Ct.* 1651, 10 *L. Ed. 2d,* at *p.* 777, *n.* 13; *Camptown Savings & Loan Assn. v. United States, etc.,* 85 *N. J. Super.* 18, 20 (*App. Div.* 1964).

In *Pioneer* the holder of a note and mortgage instituted foreclosure proceedings in a state court. The note was in the face amount of $20,000 and contained a provision that in the event of court proceedings the mortgagor would pay "a reasonable attorney's fee." The foreclosure decree fixed the attorney's fee at $1250 and "[a]fter satisfaction of court and foreclosure sale costs" the mortgagee was accorded first priority for principal, interest and the attorney's fee. The Supreme Court, in holding that the federal tax lien under section 6321 was entitled to priority over the attorney's fee, found the latter to be inchoate rather than choate. See Kennedy, "The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien," 63 *Yale L. J.* 905, 911 (1954); Note, "Federal Priorities & Tax Liens, 63 *Colum. L. Rev.* 1259, 1264 (1963). Among other matters, it pointed to the fact that the mortgagee was obligated to pay a "reasonable" fee, that this related "to the service to be performed by the attorney," and that it could not be "finally fixed in amount" until the date of the decree. 374 *U. S.,* at *pp.* 87, 90–91, 83 *S. Ct.,* at *p.* 1656, 10 *L. Ed. 2d,* at *pp.* 773–774, 776.

*Pioneer* did not deal with any item of taxed costs allowed by statute or court rule but with a contractual agreement for the payment of a fee. *Cf. Bergen Builders, Inc. v. Horizon*

*Developers, Inc.*, 44 *N. J.* 435 (1965). That contractual agreement provided, not for a fixed percentage as in *Security Mortg. Co. v. Powers*, 278 *U. S.* 149, 49 *S. Ct.* 84, 73 *L. Ed.* 236 (1928) (and as in our *R. R.* 4:55–7(c)), but for a reasonable fee which could not be ascertained until all of the legal work had been done and the final decree was about to be entered. While *Security Mortgage* dealt with a bankruptcy proceeding, it is to be noted that there Justice Brandeis remarked that "the lien was not inchoate" but "had already become perfect when the principal note and the loan deed serving it were given." 278 *U. S.*, at *p.* 156, 49 *S. Ct.*, at *p.* 86, 73 *L. Ed.*, at *p.* 241. See *United States v. Seaboard Citizens Nat. Bank*, 206 *F. 2d* 62 (4 *Cir.* 1953).

The contours of the Supreme Court's doctrine of choateness remain to be fixed and undoubtedly further pronouncements by that Court will be handed down. See *United States v. State of Vermont*, 377 *U. S.* 351, 84 *S. Ct.* 1267, 12 *L. Ed. 2d* 370 (1964); Kennedy, "From Spokane County to Vermont: The Campaign of the Federal Government Against the Inchoate Lien," 50 *Iowa L. Rev.* 724 (1965); compare *Streeter Bros. v. Overfelt*, 202 *F. Supp.* 143, 146 (*D. Mont.* 1962), with *First National Bank of Lewistown v. Tilzey*, 238 *F. Supp.* 750 (*D. Mont.* 1965). Nothing thus far, including *Pioneer* which contains no discussion whatever on the subject of taxed costs, persuades us that the traditional and incidental allowances in foreclosure proceedings under *R. R.* 4:55–7(c) are not lawfully and justly entitled to the same priority as that afforded to the mortgage principal and interest.

Reversed and remanded for distribution in conformity with the views expressed in this *per curiam*.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.