In re Eugene MORRIS, Debtor.

**WORTHEN BANK & TRUST COMPANY, N. A., Appellee,**

v.

**Eugene MORRIS and .A. L. Tenney, Trustee, Appellants.**

**No. 79–1053.**

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1979.

Decided July 26, 1979.

Charles Darwin Davidson, Patten, Brown, Leslie & Davidson, Little Rock, Ark., argued and on brief, for appellants.

Isaac A. Scott, Jr., Wright, Lindsey & Jennings, Little Rock, Ark., argued, for appellee.

Before GIBSON, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges.

GIBSON, Chief Judge.

This appeal questions whether a secured creditor is entitled to allowance of attorney fees as provided in an installment sales contract after the debtor has filed a petition under Chapter XIII of the Bankruptcy Act. The Bankruptcy Court answered the question in the negative, but the District Court [1] reversed. We affirm the District Court.

Eugene Morris, a gas station manager, purchased a one-half ton pickup truck and an automobile from Crockett Motors, Inc. on November 3, 1975, and February 7, 1976. He executed conditional sales contracts which included the following provision:

> If this contract after default is placed in the hands of an attorney for collection, the buyer will pay the holder of the contract a reasonable attorney's fee not exceeding 10% of the unpaid principal and interest, such payment to be secured by the security interest created under the contract.

The contracts were assigned by Crockett Motors to Worthen Bank & Trust Company (Worthen) and the security interests were perfected. On February 27, 1976, twenty days after purchasing the second vehicle,

---

1. The Honorable Richard S. Arnold, United States District Judge, Eastern District of Arkansas. The opinion of the District Court has been published. *In re Morris*, 461 F.Supp. 1228 (E.D.Ark.1978).

and while the sheriff was trying to execute an unrelated judgment against him, Morris filed a petition under Chapter XIII of the Bankruptcy Act.

Worthen thus found that within a four-month period it had become the assignee of two conditional sales contracts on which Morris owed approximately $5,000 and Morris had sought the haven of the Bankruptcy Court. Not surprisingly, Worthen referred the contracts to its attorney for collection. The efforts of Worthen to free the vehicles from the Bankruptcy Court for purposes of foreclosure were not successful. In fact, two and one-half years ago the Bankruptcy Court ruled that the value of the collateral was less than the secured debt. Ultimately, the only active controversy centered on Worthen's claim that it was entitled to include in its claim reasonable attorney fees up to ten percent of the debt.

In a memorandum order filed January 24, 1977, the Bankruptcy Court denied Worthen's claim for attorney fees. It relied exclusively on *Mechanics'-American National Bank v. Coleman*, 204 F. 24 (8th Cir. 1913), and *In re Schindler*, 223 F.Supp. 512 (E.D. Mo.1963). The Bankruptcy Court, without discussing Arkansas law, quoted extensively from *Schindler*, including:

> The validity of a lien for attorney's fees as part of a mortgage lien in bankruptcy, is determined by local law, and construction of the contract providing therefor is likewise a question of local law. The enforcement of the lien in bankruptcy is a federal question.

223 F.Supp. at 533. The *Schindler* court noted that there were no Missouri cases deciding the local law issue. Thus that court turned to other case law, especially early decisions of this court. One of those decisions was *Mechanics'-American National Bank v. Coleman*, 204 F. 24 (8th Cir. 1913), which purported to decide the validity of provisions for attorney fees under a federal common law of commercial practice. *Mechanics'-American* declined to follow state decisional law in interpreting commercial agreements in a context similar to that involved in this case because of the Judici-ary Act of 1789 as interpreted by *Swift v. Tyson*, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842).

■ The difficulty with *Mechanics'-American*, and hence with the Bankruptcy Court's opinion in this case, is that *Swift v. Tyson* was overruled in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The District Court recognized this and further noted that the Supreme Court specifically held that the validity and construction of attorney fee provisions in security instruments after bankruptcy should be determined by state law. *Security Mortgage Co. v. Powers*, 278 U.S. 149, 153–54, 49 S.Ct. 84, 73 L.Ed. 236 (1928). The unexplained total failure of the Bankruptcy Court to examine Arkansas law in this case results in its opinion having no persuasive effect.

Throughout much of its course, Arkansas law disfavored the recovery of attorney fees in litigation even where provided for in a note or related instrument. *American Exchange Trust Co. v. Truman Special School Dist.*, 183 Ark. 1041, 40 S.W.2d 770 (1931); *White-Wilson-Drew Co. v. Egelhoff*, 96 Ark. 105, 131 S.W. 208 (1910). However, in 1951 the General Assembly of Arkansas passed Act 350 which provided in part:

> A provision in a promissory note for the payment of reasonable attorneys' fees, not to exceed ten per cent [10%] of the amount of principal due, plus accrued interest, for services actually rendered in accordance with its terms is enforceable as a contract of indemnity.

Ark.Acts 1951, No. 350, § 1, p. 841, *codified in* Ark.Stat.Ann. § 68–910. This was narrowly construed in *National Bank of Eastern Arkansas v. Blankenship*, 177 F.Supp. 667 (E.D.Ark.1959), by then Chief District Judge, now Circuit Judge J. Smith Henley. He did so without the aid of state judicial interpretation but assumed that the policy against attorney fee recovery would result in the statute being strictly construed to validate only fee provisions found in promissory notes.

Subsequent to the *Blankenship* opinion, Arkansas adopted the Uniform Commercial

Code. Various sections of the Code liberalize the contractual freedom of the parties and suggest that provisions for attorney fees are enforceable. *See* Ark.Stat.Ann. § 85–3–119(1) and § 85–9–504(1)(a).[2] In *Geyer v. First Arkansas Development Finance Corp.*, 245 Ark. 694, 434 S.W.2d 301, 302–03 (1968), the Arkansas Supreme Court recognized these developments and construed Ark.Stat.Ann. § 68–910 to permit recovery of attorney fees as per a provision in a mortgage. The note in that case incorporated the mortgage language by reference.

▮▮▮ In light of the *Geyer* case we cannot say that the District Court erred in holding that under Arkansas law the sales contracts' provisions for attorney fees are valid. *But see Bleidt v. 555, Inc.*, 253 Ark. 766, 489 S.W.2d 235 (1973). The District Court is entitled to deference on matters of the law of the state where it sits. In this situation it seems clear that an attorney fee provision contained in a conditional sales contract which included a promise to pay should be enforced after a similar provision contained in a mortgage referenced in a promissory note was enforced in *Geyer*.

▮▮▮ The trustee also argues that activities of Worthen's counsel in the Chapter XIII proceedings were not "collection" as that term is used in the conditional sales contracts. While it is probably true that commercial agreements are not drawn in expectation that the debtor's assets will soon be tied up in Bankruptcy Court, we are satisfied that the word "collection" is not limited to pre-bankruptcy legal action. Of necessity the creditor here had to pursue its remedy in the Bankruptcy Court or forego collection of the debt. Similarly, we are not impressed by the trustee's contention that interpretation of the legal effect of a written instrument is a factual determination subject to the clearly erroneous standard of appellate review.

▮▮▮ The trustee also contends that contractual provisions for payment of attorney fees are not *enforceable* in Chapter XIII proceedings even if valid under state law. It is true that the Supreme Court has stated: "Whether the liability [for attorney fees] is, under the circumstances, enforceable against the proceeds of the sale raises federal questions peculiar to the law of bankruptcy." *Security Mortgage Co. v. Powers*, 278 U.S. 149, 154, 49 S.Ct. 84, 86, 73 L.Ed. 236 (1928). The *Security Mortgage* Court, however, went on to hold: "The character of the obligation to pay attorney's fees presents no obstacle to enforcing it in bankruptcy, either as a provable claim or by way of a lien on specific property." *Id.*

In the present case, the Court has denied enforcement through foreclosure of Worthen's lien. There is no question as to the propriety of that course in a Chapter XIII proceeding. We do not read *Security Mortgage* as stating or implying that any special rules apply to liens for the payment of attorney fees. If the lien is valid under state law and the usual requirements for enforcement are met, then the portion of the overall debt attributable to attorney fees for services actually rendered is collectible as is the unpaid loan balance. We find nothing in the language of Chapter XIII or the purposes it is designed to serve to prevent enforcement of Worthen's lien for moderate attorney fees. *See generally* 3A Collier on Bankruptcy ¶ 63.15.

---

2. Ark.Stat.Ann. § 85–3–119(1) provides:

(1) As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction, except that a holder in due course is not affected by any limitation of his rights arising out of the separate written agreement if he had no notice of the limitation when he took the instrument.

Ark.Stat.Ann. § 85–9–504(1)(a) provides, in pertinent part, that after default a secured party may sell the collateral and:

The proceeds of disposition shall be applied in the order following to

(a) the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys' fees and legal expense incurred by the secured party[.]

The trustee's reliance on *In re Atlanta International Raceway, Inc.*, 513 F.2d 546 (5th Cir. 1975), is misplaced. In that case a bank sought enforcement of an attorney fee lien in a Chapter X proceeding. Recovery would have meant a $120,000 windfall to the bank for "attorney fees" which had not been earned. The court properly refused enforcement while noting that the bank was entitled to reasonable attorney fees under other provisions of the Bankruptcy Act. 513 F.2d at 553. *In re Delaney*, 534 F.2d 645 (5th Cir. 1976), is consistent with today's holding, although we recognize that it suggests in dicta that a creditor with a secured interest in personalty would not be entitled to enforcement.

The judgment of the District Court is affirmed. In accordance with that judgment, the matter is remanded to the Bankruptcy Court for determination of a reasonable attorney fee.

Affirmed.