### In the Matter of Theodore W. CAMPBELL and Susan A. Campbell, Debtors.

**Bankruptcy Nos. 78–00830, 78–00831.**

United States Bankruptcy Court,
W. D. Wisconsin.

Nov. 6, 1979.

## OPINION

ROBERT D. MARTIN, Bankruptcy Judge.

On July 3, 1979, William J. Rameker, trustee in this Chapter XII proceeding filed his objection to the claim of Pioneer National Title Insurance Company ("Pioneer") to the extent of $10,011.25. The balance of Pioneer's claim, $105,534.18, was not objected to by the trustee. Prior to the August 3, 1979, hearing on the objection, the debtors, Theodore W. Campbell and Susan A. Campbell, filed a legal memorandum in support of the objection stating that the issue before the Court was whether Pioneer was entitled to seek reimbursement for attorney's fees charged against the estate of the Chapter XII debtor, for services performed subsequent to the filing of the Chapter XII petition. The debtor contends that the question it raised should be answered in the negative because such fees are subject to the Chapter XII Court's discretionary power to make allowances to creditors or other parties in interest pursuant to Bankruptcy Act § 492 and Bankruptcy Rule 12–28. By its letter brief filed with the Court August 2, 1979, the claimant, Pioneer, contends that the portion of its claim objected to was for attorney's fees and expenses incurred in enforcing an indemnity agreement between it and the debtor, the performance of which indemnity agreement was fully secured by mortgages on the debtor's property having a value in excess of all of debtor's obligations to Pioneer including all of the claimed fees. Pioneer further contends that because said indemnity agreement was entered into and the security for the agreement perfected prior to the debtor's filing in Chapter XII, the attorney's fees incurred and specifically provided for in the agreement are not subject to allowance by the Chapter XII Court under § 492 of the Bankruptcy Act or Bankruptcy Rule 12–28 despite the fact that the services were provided and the fees for those services charged subsequent to the debtor's petitioning in Chapter XII.

The services for which payment has been objected to were performed between November 1, 1978, and July 31, 1979. The services included various duties typical to representation of a secured creditor in a Chapter XII proceeding, including attendance at creditors' meetings, review of pro-

posed plans, preparation of claims, research, efforts to settle disputes over the amount and nature of claims, preparation of documents for the facilitation of proposed plans in this and other related proceedings in the Bankruptcy Court and related communications with clients and counsel. In addition, certain atypical services were included relating to Pioneer's unsuccessful, but persistent, resistance to the trustee's application for issuance of a certificate of indebtedness which by its terms altered Pioneer's security. Pioneer's resistance to the application included a motion for rehearing of the Court's decision reported as *In The Matter of Theodore W. Campbell*, 5 B.C.D. 553 (1979) and was in all respects time consuming for all parties involved. The attorney services to Pioneer for which reimbursement is claimed were provided by Whyte & Hirschboeck, S.C., of Milwaukee and by individual attorneys of that firm including Richard Buellesbach, a shareholder whose time was charged at $80 per hour for 53.73 hours, Robert Berdan, an associate whose time was charged at $55 per hour for 182.50 hours, Michael J. Herbert, an associate whose time was charged at $50 per hour for 8 hours, Cathleen L. Shaw, a law clerk, whose time was charged at $30 per hour for 1 hour and Marcia Rimai, a law clerk whose time was charged at $30 per hour for 11.25 hours. Disbursements in the amount of $585.76 have been made by Whyte & Hirschboeck in connection with the services for which Pioneer's claim is made.

No contention has been raised by either the trustee or the debtor that the provision for the inclusion of attorney's fees as a part of the debt secured by Pioneer's mortgages would not be enforceable under Wisconsin law. Such agreements are common in mortgage and security agreements and there is no Wisconsin statute or holding which prohibits or limits their enforcement.

The debtor has argued that the attorney's fees and expenses claimed by Pioneer were not incurred in enforcing the indemnity agreement. That agreement provides,

indemnitor hereby indemnifies and agrees to hold the Company harmless from all liability, loss or damage of any nature, including attorneys fees and expenses incurred in enforcing this agreement, which the company may sustain resulting from the issuance, either nor or in the future, of policies of title insurance

. . .

The debtor and trustee contend that some or all of the services provided after this Chapter XII proceeding was filed were merely attempts to delay, frustrate, and increase the expenses involved in the confirmation of the debtor's plan. That argument is without merit. Although, in retrospect and in light of the plan's confirmation and the determination of the court that alterations in Pioneer's security were beneficial rather than harmful to Pioneer, it may appear that a substantial portion of the attorney's services for which Pioneer is responsible were ill-advised, particularly those services expended in resistance to the issuance of a certificate of indebtedness, there is no evidence before the court that the services were undertaken with any motive or purpose other than the enforcement of the indemnity agreement and the protection of the security for the obligations of the debtor under that agreement. The fact that some portion of the claim to which the trustee did not object was for attorney's services incurred prior to the filing of the petition and to that extent the efforts of Pioneer's counsel were directed to preserving the payment of their own fees does not vitiate the good faith of Pioneer or its counsel in enforcing the indemnity agreement and protecting the security in this Chapter XII proceeding. Whether the amount of the fees charged Pioneer was reasonable and, therefore, allowable as a part of a claim in this proceeding is a matter for separate consideration. See *In re Schafer's Bakeries*, 155 F.Supp. 902, 912 (D.C.1957), *In re Bain*, 527 F.2d 681, 687, 2 B.C.D. 139 (6th Cir. 1975) and *In re Eugene Morris*, 602 F.2d 826, 5 B.C.D. 683 (8th Cir. 1979).

The central issue in this case is whether Pioneer may include attorney's fees as a part of its claim or if it is required to seek

an allowance of its fees in this Chapter XII proceeding. In a case arising in straight bankruptcy the Supreme Court stated,

Whether the liability [for attorney fees] is, under the circumstances, enforceable against the proceeds of the sale raises federal questions peculiar to the law of bankruptcy. The character of the obligation to pay attorney's fees presents no obstacle to enforcing it in bankruptcy, either as a provable claim or by way of a lien upon specific property. *Security Mortgage Co. v. Powers*, 278 U.S. 149, 154, 49 S.Ct. 84, 86, 73 L.Ed. 236 (1928).

In a case arising under Chapter XIII, the 8th Circuit Court of Appeals interpreted *Security Mortgage Co.* as follows:

We do not read *Security Mortgage* as stating or implying that any special rules apply to liens for the payment of attorney fees. If the lien is valid under state law and the usual requirements for enforcement are met, then the portion of the overall debt attributable to attorney fees for services actually rendered is collectible as is the unpaid loan balance. We find nothing in the language of Chapter XIII for the purposes it is designed to serve to prevent enforcement of [creditor's] lien for moderate attorney fees. *See generally*, 3A Collier On Bankruptcy, Para. 63.15. *In re Eugene Morris*, 602 F.2d 826, 5 B.C.D. 683, 1979.

No case has been cited by counsel and none found interpreting the *Security Mortgage* in a Chapter XII case; however, the question of whether a creditor in Chapter X must seek an allowance for attorney's fees incurred during a proceeding or may include those attorney's fees as a part of its claim was considered by the United States District Court for the Eastern District of Michigan in *In re Schafer's Bakeries*, 155 F.Supp. 902 (1957). The Court extended the holding in *Security Mortgage* that a trustee in straight bankruptcy takes property subject to valid liens including those for reasonable attorney's fees to Chapter X proceedings. Cases under § 243 of the Bankruptcy Act, which is the allowance section in Chapter X parallel to § 492 to in

Chapter XII, were specifically distinguished. The Court stated,

These cases are not in point. None of them involve a contractual lien claim of a secured creditor for attorneys' fees and expenses. All involve application of § 243 to situations where an order is requested authorizing payment for attorneys' services rendered to a creditor in the course of a Chapter X proceeding and alleged to be a part of the administration of the estate. This is not the problem in the instant case. [Creditor] admits that it has no basis for a claim under § 243, but rather contends that such fees and expenses comprise a contractual debt which may be claimed entirely apart from the provisions of § 243.

§ 186 of the Bankruptcy Act (11 U.S.C. § 586, 11 U.S.C.A. § 586) provides:

'A trustee, upon his appointment and qualification, shall be vested with such title as a trustee appointed under section 44 of this Act would have.'

Thus, since § 44 relates to the appointment of trustees in ordinary bankruptcy proceedings, it appears that the trustee in a Chapter X proceeding takes title subject to any encumbrances that may be asserted in an ordinary bankruptcy. . .

In [*Security Mortgage Co. v. Powers*, supra, (1928), 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236] the Supreme Court held that the validity of a stipulation for attorneys' fees contained in a loan deed was a matter of state law and, if valid under state law, the bankruptcy court must enforce such a lien in an ordinary bankruptcy proceeding. In that case, the facts were essentially similar to the instant case, except that the proceeding was not initiated under Chapter X. The court also held that the fact that the services were rendered after adjudication in bankruptcy did not destroy the validity of the lien

. . .

The *Schafer* opinion concludes:

Under § 186 and above authorities, it seems clear that a Chapter X trustee, having the same title to property as a trustee in ordinary bankruptcy, takes ti-

tle subject to a lien for attorney fees and expenses valid under applicable state law. The provisions of § 243 relate only to expenses incurred and services rendered in connection with the administration of the estate and have no bearing on a valid lien for such fees and expenses established prior to filing the petition for reorganization. Therefore, this court concludes that [creditor's] claim for attorney fees and expenses became a part of the original debt secured by valid liens established prior to filing these reorganization petitions and are enforceable in these proceedings. However, this court will in the exercise of its powers determine in a proper proceeding what expenses were properly incurred and what amount constitutes a reasonable fee for such services.

■ The reliance of the debtor and trustee of *In re Atlanta International Raceway, Inc.*, 513 F.2d 546 (5th Cir. 1975), for the proposition that *Security Mortgage* should be applied to straight bankruptcy only is not compelling. In that case the bank claiming attorney's fees of $120,000 did not contend that the fees had been earned. Rather, the bank sought a $120,000 windfall to be added to its debt as a result of the debtor filing a Chapter X reorganization thereby defaulting on its obligation. Default alone gave rise to the attorney's fees sought. In the present case, the only fees sought are those billed to Pioneer on the basis of services performed.

■ Finally debtor argues that permitting Pioneer's attorney's fees as claimed would violate the purposes of a Chapter XII reorganization by draining off the debtor's assets. In this case the objection to the claim has been brought and heard only after the consummation of a Chapter XII plan which provided for payment in full of all obligations of the debtor. There is no evidence that the inclusion of Pioneer's claim in its full amount will frustrate the plan or cause its failure.

The question remains whether the fees charged Pioneer by Whyte & Hirschboeck, S.C. were reasonable. The elements in determining a reasonable fee for an attorney have been summarized in *In re Osofsky*, 50 F.2d 925 (2nd Cir.), at 927:

(1) The time which has [sic] fairly and properly to be used in dealing with the case; because this represents the amount of work necessary. (2) The quality of skill which the situation facing the attorney demanded. (3) The skill employed in meeting that situation. (4) The amount involved; because that determines the risk of the client and the commensurate responsibility of the lawyer. (5) The result of the case, because that determines the real benefit to the client. (6) The eminence of the lawyer in the bar, or in the specialty in which he may be practicing.

Each case, of course, differs to some extent from every other case in respect of the importance of these several elements.

Applying those guidelines, most of the work by Whyte & Hirschboeck undertaken on behalf of Pioneer appears to be necessary, undertaken with considerable skill by lawyers with eminence at the bar generally and in the case of Mr. Berdan, skill in bankruptcy matters. The totality of the attorneys' efforts led to Pioneer's preservation of its fully secured position as to any claim which may be allowed in this matter.

There is, however, a legitimate question as to whether the attorney services undertaken in resisting the issuance of a certificate of indebtedness which facilitated the confirmation and consummation of the plan were necessary or beneficial to the client. The situation is opposite to that in which the 9th Circuit in *Sampsell v. Monell*, 162 F.2d 4, 6 (9th Cir. 1947), held that a secured party could not be denied reasonable attorney's fees where it had assisted and cooperated with the trustee. Consideration of benefits to the trustee or the debtor is not appropriate to the determination of reasonableness for the allowance of fees as a part of this secured claim. *In re Bain*, supra. However, in the present case, Pioneer took actions which were not only antagonistic to the position of the debtor and trustee, but which did not in fact and could not have reasonably been expected to benefit Pioneer

itself. For further discussion of the merits of Pioneer's resistance to the issuance of a certificate of indebtedness, see my previous opinion in this matter reported at 5 B.C.D. 553.

■ There is no suggestion that the efforts of Whyte & Hirschboeck, S.C. on behalf of Pioneer were not undertaken in good faith. However, that alone does not make those efforts reasonable. Under the circumstances of this case, Pioneer's efforts to resist the amended application to issue a certificate of indebtedness after its initial investigation and through the motion for rehearing were disproportionate to the risks faced by Pioneer, were indicative of an incorrect judgment and were, to that extent, a less than skillful performance of the services and were unsuccessful in every respect. Thus, under the appropriate test of reasonableness set out above, the claim for fees and expenses incurred in resistance to the amended application fails. The unreasonableness of the fees arises solely and directly from the decision to undertake unnecessary services and there is no basis for finding any inadequacy in the performances of those services as undertaken. There is no evidence of whether the decision to resist the application was that of the attorneys themselves or was dictated by the client. In either case, the claim of Pioneer in this proceeding to be reimbursed for those services by the debtor must be denied.

■ The affidavits filed by Pioneer in support of its claim indicate that the unreasonable and unnecessary services were those performed from April 3, 1979, through April 11, 1979, for which fees in the approximate amount of $3,030 and disbursements in an approximate amount of $200 were charged. Accordingly, the claim of Pioneer must be reduced by the amount of $3,230, together with any interest accrued thereon. The remainder of the fees and disbursements charged by Whyte & Hirschboeck, S.C., in this matter appear to be reasonable in regard to all tests set forth in *In re Osofsky*, were incurred in the enforcement of the indemnity agreement under which Pioneer has made its claim, and for the reasons set out herein shall be allowed as a part of that claim.

JUDGMENT MAY BE ENTERED ACCORDINGLY.