NATIONAL ACCEPTANCE COMPANY,
Appellant,

v.

Samuel J. ZUSMANN, Sr., Trustee in Bankruptcy for Walter R. Thomas, Athens, Inc., et al., Bankrupt, Appellees.

No. 24030.

United States Court of Appeals
Fifth Circuit.

June 23, 1967.

G. W. Thackston, Jr., Nolan B. Harmon, Harmon & Thackston, Atlanta, Ga., for appellant.

Samuel J. Zusmann, Jr., Morris W. Macey, W. Stell Huie, Lipshutz, Macey, Zusmann & Sikes, Atlanta, Ga., for appellees.

Before COLEMAN and AINSWORTH, Circuit Judges, and CARSWELL, District Judge.

COLEMAN, Circuit Judge:

On review, the District Court affirmed the holding of the Referee in Bankruptcy

that the Referee in his sound discretion, and not the law of Georgia, should determine the amount of attorney's fees due a secured creditor of a bankrupt estate. We reverse.

The National Acceptance Company, hereinafter referred to as N. A. C., is a Georgia corporation. The bankrupts, hereinafter referred to as Thomas, were likewise Georgia corporations. It has been stipulated that the problem here to be decided applies to each and all of them alike. In 1963, Thomas entered into an accounts receivable financing agreement with N. A. C., and executed promissory notes accordingly. N. A. C. then and thereafter lent money to Thomas. On January 22, 1964, Thomas executed a "Chattel Mortgage Security Agreement" in favor of N. A. C. The notes and the chattel mortgage provided for the payment of attorney's fees and further provided that such fees would constitute a lien on the mortgaged property. By April 3, 1964, Thomas had defaulted in its obligations. On that date, N. A. C. gave Thomas written notice of default and declared its intention to collect attorney's fees as provided in the written evidences of debt, and as further provided by Georgia Code Annotated § 20–506 (1933, as amended 1957).[1] On April 6, N. A. C. took possession of the property described in the security instrument and instituted foreclosure proceedings.

On April 8, 1964, Thomas began arrangement proceedings under Chapter XI of the Bankruptcy Act. Adjudication followed.

■ The Referee held that the notice of default and intention to collect attorney's fees did not put the trustee on notice in compliance with § 20–506(c), Georgia Code Annotated (see Footnote 1). The District Court reversed on this point and was clearly right in so doing, Security Mortgage Co. v. Powers, 1928, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236. As to this there is no cross appeal.

The sole issue, then, is whether the Referee, as he held, had the authority to fix the amount of the fees independently of the provisions of the Georgia statutes.

By stipulation of the parties, the notes and chattel mortgage were not fully copied into the record. We have before

---

1. 20–506. (4252) Attorney's fees in notes, etc., in addition to interest.—Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable, and collectible as a part of such debt, if such note or other evidence of indebtedness be collected by or through an attorney after maturity, subject to the following provisions:

(a) If such note or other evidence of indebtedness provides for attorney's fees in some specific per cent. of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 per cent. of the principal and interest owing on said note or other evidence of indebtedness.

(b) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees, without specifying any specific per cent., such provision shall be construed to mean 15 per cent. of the first $500 principal and interest owing on such note or other evidence of indebtedness, and 10 per cent. of the amount of principal and interest owing thereon in excess of $500.

(c) The holder of the note or other evidence of indebtedness, or his attorney at law, shall, after maturity of the obligation, notify in writing the maker, indorser or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, indorser or party sought to be held on said obligation has 10 days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, indorser or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement.

(d) Obligations to pay attorney's fees contained in security deeds and bills of sale to secure debt shall be subject to provisions of this section where applicable.

us only the following excerpts from these instruments:

### NOTE

* * * if the holder hereof shall incur or pay * * * any attorney's fees * * * *such* attorney's fees * * * shall be and is hereby made a further charge and lien upon the collateral pledged hereunder. (Emphasis added)

### SECURITY AGREEMENT

* * * if Mortgagee shall incur or pay any * * * attorney's fees * * * *such reasonable* attorney's fees * * * shall be and is hereby made a further charge and lien upon the mortgaged property. (Emphasis added)

An examination of § 20–506 of the Georgia Code reveals that obligations to pay attorney's fees upon any note *or other evidence of indebtedness* shall be valid and enforceable *as a part of the debt* if such note or other evidence of indebtedness be collected by or through an attorney after maturity (emphasis added). The statute further directs that if the note or other evidence of indebtedness provides for the payment of reasonable attorney's fees, without specifying any specific per cent, such provision shall be construed to mean 15% of the first $500 principal and interest owing on such note or other evidence of indebtedness and 10% of the amount of principal and interest owing thereon in excess of $500.

█ There is nothing ambiguous or abstruse about these provisions. The parties were all residents of Georgia; they were charged with notice of the statute. In the note or in the chattel mortgage, or both, they could have contracted for a specific attorney's fee as provided by § 20–506(a). This they did not do. The word "reasonable" does not appear in the note, but it does appear in the security agreement, one of the evidences of the indebtedness owed to N. A. C. We are not to suppose that Thomas would have agreed to pay an unreasonable fee or that N. A. C. would

have accepted anything less than reasonable. The mortgage used the term "reasonable". It is too plain for cavil, we think, that if the attorney's fees were actually incurred or paid, then the debtor bound himself to pay as provided by § 20–506(b).

Nevertheless, the trustee asserted before the Referee and continues to insist here that the Referee could ignore the statute and had the authority to determine the amount of attorney's fees to be allowed.

The Referee held, and the District Court agreed:

"The specific question to which we must address ourselves is the issue of what method we should employ to arrive at attorney's fees. The *Security Mortgage* decision established the enforceability in general of an attorney's fee provision, and it is stated that the allowability of these fees must be determined by the law of the state. However, there is no language in the *Security Mortgage* decision which would bind this Court concerning the amount of attorney's fees to be allowed."

* * * * * *

"In conclusion, it seems to me that the Federal Courts are not bound by any stipulated percentage whether they be spelled out in the instrument or whether they be referred to as 'reasonable,' seeking to enforce the Georgia statutory definition thereof. It would be my view that these percentages would constitute only a maximum that the Court would allow, and that regardless of whether the instrument provided for a fixed percentage or only generally for such fee, it would be the duty of the Court to determine what constitutes a reasonable fee under the circumstances."

Interestingly enough, Security Mortgage Company v. Powers, supra, dealt with a Georgia situation. The Florida Furniture Company was adjudicated bankrupt in the Southern District of Florida. Among its assets was real estate in Georgia, acquired by purchase

**354**

from the Hanson Motor Company. The property was subject to a loan deed given to secure notes of the Motor Company. An ancillary receiver appointed in the Northern District of Georgia took possession of the Georgia real estate. The Security Mortgage Company was the holder of the Hanson notes. The notes provided for a specific sum, 10%, as attorney's fees, if collected by law or through an attorney at law. It is not necessary that we should here repeat the details of the controversy between the trustee and the mortgage company.

Suffice it to say, in an unanimous opinion, written by Mr. Justice Brandeis, the Supreme Court held that "The validity of the lien claimed by the mortgage company for attorney's fees must be determined by the law of Georgia; for the contract was there made and was secured by real estate there situate. * * * The construction of the contract for attorney's fees presents, likewise, a question of local law."

The Supreme Court recognized that the attorney's fees were a part of the principal debt, secured by a lien upon the property given as security, that the lien became perfect when the principal note and the loan deed securing it were given, and that the secured obligation survived bankruptcy.

In obedience to the views of the Supreme Court that the lien for attorney's fees was perfected upon the execution and delivery of the evidences of indebtedness, that the validity of that lien is to be determined by the law of Georgia, and that the construction of the contract as to attorney's fees is likewise a question of Georgia law, we cannot agree in this case that the Referee has the authority to disregard § 20–506 and to reduce the secured indebtedness, the amount of which the parties fixed for themselves under the provisions of the Georgia statute.

The judgment of the District Court will be reversed and attorney's fees will be allowed as directed by § 20–506(b) of the Georgia Code.

Reversed, with directions.