**In re Ernest P. FABIAN and Verna E. Fabian, Debtors.**

**Bankruptcy No. 83–03446T.**

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 4, 1985.

Karen L. Turner, Reading, Pa., for debtors.

Alan G. Leisawitz, Reading, Pa., for Margaret Moser Schell.

Robert J. Jenison, Harrisburg, Pa., for U.S.

Ellis Brodstein, Reading, Pa., trustee.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

In this Chapter 7 case, the debtors' former landlord, Margaret Moser Schell ("Schell"), has filed a proof of claim for administrative expenses in the amount of $17,862.57 under 11 U.S.C. § 503(b)(1)(A). One aspect of the claim is for $11,940.00 for the reasonable value of the debtors' post-petition use and occupancy of the leased premises. The other aspect of the claim is for $5,920.57 for damages caused to the leased premises by the debtors. The Chapter 7 trustee and a secured creditor, the United States of America, acting through the Farmers Home Administration ("FmHA"), have objected to the proof of claim and a hearing was held on the proof of claim and objections thereto.

The debtors filed their Chapter 7 bankruptcy petition on September 1, 1983. At that time, the debtors were tenants of Schell pursuant to a written lease which had been in effect for several years and was to expire on March 31, 1984. The lease called for rental payments of $1,800.00 per month. The debtors were current in their rent through August, 1983, but did not pay any rent from the time that they filed their bankruptcy petition, on September 1, 1983, through March 19, 1984, when they vacated the premises. As of their bankruptcy filing, the debtors owned a great deal of livestock and farm equipment, all of which was located on the leased premises. The trustee conducted a public sale of the livestock on November 15, 1983 and a public sale of the farm equipment on March 15, 1984. The sales produced combined proceeds of approximately $80,000.00. The livestock and farm equipment remained on the leased premises until their respective sales, and the debtors cared for, maintained, and protected them during this period of time, including the feeding of the livestock. Also, there is undisputed evidence that, for various reasons, the price paid for the farm equipment on March 15, 1984 was substantially higher than would have been paid in the autumn

of 1983. Therefore, as to her use and occupancy claim, Schell contends that the debtors' post-petition use of the leased premises and their corresponding maintenance and protection of the livestock and farm equipment on the premises resulted in a preservation of property of the bankruptcy estate. Furthermore, argues Schell, the value of such use of the leased premises constitutes "the actual, necessary costs and expenses of preserving the estate" pursuant to 11 U.S.C. § 503(b)(1)(A). The value of such use, continues Schell, should be the $1,800.00 per month lease rental amount because the preservation of the estate property essentially required the debtors' use of the entire leased premises. Schell adds that she was effectively precluded from using the leased premises for her own purposes (including the possible re-renting of the premises) while the debtors remained there.

■ In opposing Schell's use and occupancy claim, FmHA contends that the trustee never assumed the lease and that the lease must thus be deemed to have been rejected by the trustee under 11 U.S.C. § 365(d)(1). Therefore, argues FmHA, "the claimant would have no claim for any rental payments after November 1, 1983 under the terms of the original lease." (FmHA Memorandum, p. 4). Thus, FmHA contends that Schell's claim for use and occupancy cannot extend beyond November 1, 1983. However, we must reject FmHA's argument. Assuming *arguendo* that the above-quoted language in the FmHA Memorandum is correct, it is, nevertheless, inapposite because Schell's entitlement to administrative expenses pursuant to 11 U.S.C. § 503(b)(1)(A) is a separate issue from the issue of the assumption or rejection of an unexpired lease by the trustee pursuant to 11 U.S.C. § 365(d). *See In re Royal International Corp.*, 30 B.R. 750 (Bankr.W.D.Ky.,1983); *In re Ram Mfg., Inc.*, 38 B.R. 252 (Bankr.E.D.Pa.1984); *In re Peninsula Gunite, Inc.*, 24 B.R. 593 (Bankr. 9th Cir.1982). Furthermore, we find that the conduct of all of the parties herein was consistent with Schell's use and occupancy claim in that Schell was encour-

aged by the other parties to allow the debtors and the property of the debtors' estate to remain on her premises until the sales were completed. In addition, we are fully satisfied from the record, and no one has specifically contended otherwise, that the benefit to the debtors' estate from the post-petition use and occupancy of the premises by the debtors and by the estate property was of approximately the equivalent value as Schell's use and occupancy claim of $11,940.00. Therefore, we shall allow Schell's administrative expense claim in the amount of $11,940.00.

■ Schell also requests allowance of her administrative expense claim for $5,920.57 for damages caused to the leased premises by the debtors. However, this claim must be denied because Schell neither alleged nor proved that these damages occurred post-petition.

■ Finally, Schell has argued that, pursuant to 11 U.S.C. § 506(c), she is entitled to payment of her administrative expense claim from the proceeds of the public sales of the debtors' livestock and farm equipment. However, § 506(c), by its plain language, permits recovery only by a trustee. *Also see In re Codesco, Inc.*, 18 B.R. 225, 230 (Bankr.S.D.N.Y.1982). Therefore, this argument by Schell must be rejected.