**In the Matter of Sheryl B. RICE, Debtor.**

**John BARGAS, Movant,**

v.

**Sheryl B. RICE, Respondent.**

**Bankruptcy No. 187–00832.**

United States Bankruptcy Court, S.D. Georgia, Augusta Division.

Dec. 14, 1987.

W. Barry Williams, Martinez, Ga., and Larry E. Maioriello, Augusta, Ga., for movant.

Louis Saul, Augusta, Ga., for debtor.

## FINAL ORDER ON MOTION FOR RELIEF FROM STAY

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

John Bargas, a secured creditor filed his Motion for Relief from Stay in the above case, which was denied in a Preliminary Order dated October 29, 1987 and filed October 30, 1987. Thereafter, a final hearing to consider the Motion was held on November 10, 1987. At the conclusion of the hearing the record was left open for the parties to file briefs for a period of two weeks which briefs have now been filed. Based on the evidence adduced at both the preliminary and final hearings I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1) The Findings of Fact and Conclusions of Law of my Order dated October 29, 1987, are incorporated herein by reference.

2) The balance of principal and accrued interest owed on the subject property, as of November 10, 1987, and January 5, 1988 (the earliest day on which a nonjudicial foreclosure could be conducted) are as follows:

| | 11/10/87 | 1/5/88 |
|---|---|---|
| a) First Deed to Secure Debt (Palmetto-Bargas) ($192.17 per diem) | $543,575.44 | $554,336.96 |
| b) Second Deed to Secure Debt (Summit-Holley) ($6.80 per diem) | $ 20,618.80 | $ 20,999.60 |
| c) Third Deed to Secure Debt (Bargas) ($57.80 per diem) | $175,259.80 | $178,496.60 |
| | $739,454.04 | $753,833.16 |

3) Interest accrues at a rate of $256.77 per day or $7,703.10 for a 30 day month after January 5, 1988.

4) Unpaid taxes on the realty for 1986 and 1987 amount to $8,826.60 and together with estimated advertising foreclosure costs of $676.00, yield a total debt of $763,335.76.

5) The notes secured by the realty in question provide for attorney's fees after default and notice thereof of an additional 15% or $123,074.90. (Exhibits P–16, P–6 and P–1). Movant's statutory notice of his intent to collect said fees was given by letter dated July 23, 1987, and received on July 27, 1987. (Exhibits D–11, D–12, D–13 and D–14). Debtor's case was filed August 3, 1987.

6) No additional evidence on the issue of value was presented beyond that which was heard at the preliminary hearing with one exception. An expert called on behalf of Bargas testified that the most appropriate way to value property such as that in issue here is by the market data approach, using comparable sales. This was an apparent effort to bolster the prior testimony of Movant's expert. He had valued the property at $760,000.00 and had relied on the market approach in contrast to Debtor's expert whose value was $935,000.00 and who relied more heavily on the replacement cost method.

7) Based on all the evidence, including the potentially higher value that could be achieved by selling the land and improvements in parcels, rather than as a whole, as testified to by both experts, I conclude that the fair market value of the real estate in question is $800,000.00.

8) Debtor has made no payment on any of the notes since before this case was filed. She has no source of income other than a right to $11,000.00 per month in alimony from her ex-husband, who himself is bankrupt, and has not been meeting this obligation to her on a regular basis.

### CONCLUSIONS OF LAW

11 U.S.C. Section 362(d) provides:

"(d) on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such

as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."

Pursuant to 11 U.S.C. Section 362(g) Movant has the burden of proving the lack of equity and Debtor has the burden on all other issues.

▪ In Debtor's counsel's pleadings, argument, and line of questioning of some witnesses, it was asserted, or at least implied, that due to lack of consideration, fraud, duress, estoppel or some similar theory, part or all of the debt owed on the real estate could be discharged or set-off. Whether such allegations can properly be considered in a motion hearing or must be litigated in the more formal context of an adversary proceeding under Bankruptcy Rule 7001(2) to determine the validity of a lien is problematic. While the terms of 11 U.S.C. Section 362 suggest that the only issues to be litigated are adequate protection, equity, and necessity to an effective reorganization, some proof of the existence and amount of a debt must necessarily be an element of the equity analysis. I seriously question whether this court can make a final determination that the lien or the underlying debt is invalid outside the context of an adversary proceeding (with the procedural due-process built into those proceedings) or without benefit of a final judgment rendered in another forum. Nevertheless, when presented with evidence in defense of a motion for relief that strongly supports an inference that the lien might be held invalid in such a proceeding, this court would be compelled to deny the motion and leave the stay in effect for a sufficient time to allow the debtor to pursue other litigation. *See* 2 Collier, ¶ 362.08[3] at 362–367; *In re Cedar Bayou Ltd.*, 456 F.Supp. 278 (W.D.Pa.1978); *In re*

*Talley Well Service, Inc.*, 45 B.R. 149 (Bankr.E.D.Mich.1984). In this case, however, the evidence presented was utterly insufficient to raise such an inference. Indeed, the testimony of Mr. Bargas and Mr. Guy indicated clearly that adequate consideration was given in exchange for the note and Debtor conceded that the only pressure on her to participate in the transactions came from her ex-husband. As a result, for the purpose of this motion, I conclude that the existence of the debt and its amount are established in the amount set forth in Findings of Fact Number 2.

▪ Nevertheless, Movant has failed to prove lack of equity in the realty in question based upon its value of $800,000.00 and debt of $763,335.76, unless Movant is entitled to add to the indebtedness the attorney's fees of $123,074.90. It is axiomatic that the validity of a lien for attorney's fees is a question of state law, whereas the enforceability of that lien in a bankruptcy proceeding is a matter of federal law. *Security Mortgage Co. v. Powers*, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236 (1928). O.C.G.A. Section 13–1–11 requires as a condition precedent that in order to enforce a provision for attorney's fees in a note, the debtor must be given 10 days notice of the holder's intent to enforce such a provision. During that time the obligor is free to pay the balance due without liability for attorney's fees.

The question presented here is whether the filing of a case under Title 11 after such a 10 day notice is sent but prior to the time that the 10 days expires precludes the holder from adding the attorney's fees to the balance due on the note in the bankruptcy case.

After consideration of relevant authorities, I conclude that the holder whose attorney's fees notice was given pre-petition but which expired post-petition is barred from collecting attorney's fees. See *In re East Side Investors*, 694 F.2d 242, rehrng. den. 702 F.2d 214 (11th Cir., 1983) (creditors notice was sent and 10 day period expired pre-petition, held: right to collect attorney's fees had vested); *In re Atlanta International Raceway*, 513 F.2d 546 (5th

Cir., 1975) (creditors notice was sent post-petition, held: lien could not be enforced in bankruptcy). In so holding, I am persuaded by the *Atlanta International* court's analysis which suggests that even a pre-petition notice does not operate to vest attorney's fees if a bankruptcy injunction arises before the 10 days expires. *Atlanta International, supra.* at 552 n. 13. The automatic stay of 11 U.S.C. Section 362 constitutes such an injunction and is sufficient to prevent the right to collect attorney's fees from vesting.

In this regard, *National Acceptance Co. v. Zusmann*, 379 F.2d 351 (5th Cir., 1967) is distinguishable. There, although the bankruptcy was filed, as here, after the attorney's fee notice was sent and while the 10–day period was running, there was no automatic stay in the case nor was any injunction entered which would have precluded National Acceptance Company from perfecting its right to attorney's fees.[1]

■ As a result Movant's right to attorney's fees had not vested, the relevant debt figure is $763,335.76 as of January 5, 1988, and Movant has failed to prove lack of equity, based on a valuation of $800,000.00.

■ Movant can still succeed, however, if he demonstrates "cause" for the grant of relief, including lack of adequate protection. 11 U.S.C. § 362(d)(1). "Cause" to grant relief may be found upon a showing that debtor is not making the payments due on the real estate as they become due, failing to pay taxes and the like. *In re Keays*, 36 B.R. 1016 (Bankr.E.D.Pa.1984). *In re Pelzer*, 15 B.R. 73, 5 C.B.C.2d 579 (Bankr.E.D.Pa.1981). Generally, some debtor misconduct has been required before the stay will be lifted for non-payment. *In re Lipply*, 56 B.R. 524 (Bankr.N.D.Ind. 1986). However, if an equity cushion exists in the property such may be sufficient to constitute adequate protection for the secured creditor. *In re Schockley Forest*, 5 B.R. 160, 2 C.B.C.2d 756 (Bankr.N.D.Ga., 1980); *In re Grant*, 29 B.R. 375, 8 C.B.C.2d

982 (Bankr.M.D.Pa.1983). Here, the equity cushion is relatively small ($36,000) which in percentage terms is less than 5%. In view of the likely costs of sale and the inherent delay which will occur in marketing this unique piece of realty I cannot reasonably conclude that the equity cushion in this realty, standing alone, will adequately protect Movant as contemplated by 11 U.S.C. Section 361.

■ In cases such as this, while there is a split of authority between the circuits adequate protection may be provided by payment of sufficient funds to compensate the creditor for "lost opportunity costs". These include loss of use of the creditor's investment, occasioned by the delay interposed by the bankruptcy proceeding, which could be avoided if the creditor were permitted to foreclose and reinvest the proceeds of the sale. *In re American Mariner, Inc.*, 734 F.2d 426 (9th Cir.1984).

■ While Debtor made no offer of adequate protection, I conclude that she is required by 11 U.S.C. Section 361 to make or cause to be made, adequate protection payments on a monthly basis in the amount of $7,703.10 and to present satisfactory proof of insurance on the premises in an amount not less than $800,000.00 showing Movant as loss payee. Because no foreclosure could be consummated under Georgia law, after this Order becomes final, until February 2, 1988 the first such payment shall become due not later than 5:00 o'clock p.m., on that date, payable in certified funds at the offices of Movant's attorney, L.E. Maioriello. See *American Mariner; supra* at 435, n. 12; *In re Ahlers*, 794 F.2d 388, 395 (8th Cir.1986); *In re Asbridge*, 66 B.R. 894 (Bankr.D.N.D.1986).

## ORDER

Based on the foregoing, the Motion for Relief from Stay is denied, and Debtor IS ORDERED to make adequate protection

---

1. Prior to October 1, 1973, the automatic stay applied only to Chapter X and XII of the Bankruptcy Act. The Debtor in *Zusmann* filed a Chapter XI on April 8, 1964 and, therefore, did not have the benefit of the automatic stay. Accordingly, the mere sending of notice, pre-petition, was held sufficient to vest the right to collect attorney's fees.

payments as set forth, until further order of this Court.