**FULCRUM INTERNATIONAL, LTD., Appellant,**

v.

**SAYBROOK MANUFACTURING COMPANY, Appellee.**

**Civ. A. No. 90–191–2–MAC (WDO).**

United States District Court, M.D. Georgia.

Feb. 19, 1991.

---

142

Jerome L. Kaplan, Macon, Ga. for plaintiff.

C. David Butler, Alston & Byrd, Atlanta, Ga., for Mfrs. Hanover.

Matthew D. Williams, Atlanta, Ga. and Webb, Kicklighter & Casey, Marietta, Ga. for defendant.

OWENS, Chief Judge:

Before the court is an appeal from the bankruptcy court's denial of Fulcrum International, Ltd.'s ("Fulcrum") request for assessment of its professional fees against the proceeds of the sale of assets of Saybrook Manufacturing Co., Inc., Clinton Marine Products, Inc., Sero Holding, Inc., and the Sero Company (collectively "Sero"). The proceeds are the collateral of Manufacturers Hanover Bank (Delaware), Manufacturers Hanover Trust Company and Union Trust Company. ("The Banks"). The court having considered the record and the relevant authority now issues the following order.

## FACTUAL BACKGROUND

Fulcrum, an investment and merchant banking firm, and the Sero Company, a clothing manufacturer facing financial difficulty, entered into an agreement on December 12, 1988, in which Sero agreed to pay Fulcrum eight percent (8%) of the principal amount of any equity investment arranged by Fulcrum. Sero also agreed to reimburse Fulcrum for reasonable expenses. Sero filed its petition under Chapter 11 of the Bankruptcy Code on December 22, 1988. Fulcrum continued to seek funding for Sero post-petition. Fulcrum contacted several potential investors about an equity investment in Sero. However, all serious investors indicated that they were

only interested in purchasing Sero's assets. One of those investors was Brynwood Partners II L.P. ("Brynwood"). Brynwood is an investment limited partnership which makes equity investments in public and private companies. Fulcrum introduced Brynwood to Sero. Brynwood had numerous meetings and telephone calls with Fulcrum concerning the Sero opportunity. Brynwood demonstrated by affidavit that it would not have been aware of the Sero opportunity but for the efforts of Fulcrum. Fulcrum failed to apply for court approval for post-petition professional services rendered on behalf of Sero until October 19, 1989.

Immediately after Sero filed its bankruptcy petition, Manufacturers Hanover agreed to advance Sero a $2,000,000.00 line of credit and to allow Sero to use $1.000,-000.00 of collateral. This post-petition lending facility was secured by virtually all pre-petition and post-petition assets of Sero. The agreement provided that Manufacturers Hanover would subordinate its lien and security interest for the payment of not more than $150,000.00 in aggregate professional fees and expenses.

The bankruptcy court entered an "Emergency Order Authorizing Use of Cash Collateral and Secured Borrowing" on December 23, 1988. The order granted Manufacturers Hanover a superpriority over all administrative expenses incurred in the reorganization proceeding of the kind specified in section 503(b) or section 507(b) of the bankruptcy code except for payment of $150,000.00 in professional fees and expenses.

On January 31, 1989, the bankruptcy court entered a final order confirming the emergency order. The court entered a supplemental order regarding cash collateral and secured financing on February 3, 1989. The Debtors' reorganization efforts failed and the bankruptcy court approved the sale of virtually all of Debtors' assets to Brynwood for $3,775,000.00.

On October 19, 1989, Fulcrum filed an application for employment as a professional *nunc pro tunc*. Fulcrum asserted that it was the procuring agent for the sale of Debtors' assets and sought allowance of compensation and reimbursement of expenses. On December 5, 1989, the bankruptcy court granted Fulcrum's application and awarded $75,296.31 for professional fees and expenses.

Fulcrum requested that Manufacturers Hanover pay its professional fees and expenses from the sale proceeds, but Manufacturers Hanover refused. Manufacturers Hanover continues to hold the sale proceeds. A hearing was held by the bankruptcy court on March 1, 1990, for the purpose of considering Fulcrum's request for disbursement of funds and payment of court approved professional fees. Fulcrum contended that all issues relating to the propriety of its fees and expenses had been heard and decided by the bankruptcy court. Fulcrum further contended that it was entitled to its fees and expenses under sections 364(c) and 506(c) of the bankruptcy code, in spite of Manufacturers Hanover's superior status.

Following the hearing, the bankruptcy court entered a final order finding that its previous memorandum opinion did not address the source from which Fulcrum could recover its award and, therefore, collateral estoppel did not apply. The bankruptcy court then denied Fulcrum's request for payment of its fees from the proceeds of the sale of Debtor's assets to Brynwood. The bankruptcy court found that the professional fees and expenses awarded to Fulcrum were administrative expenses pursuant to section 503(b) and, therefore, were subordinate to Manufacturers Hanover's superpriority status. The bankruptcy court further found that Fulcrum lacked standing to recover its award under 11 U.S.C.A. § 506(c). Appeal was taken from the bankruptcy court's order and is now before this court.

## DISCUSSION

█ The issues to be decided by the court are:

I. Whether the bankruptcy court erred in concluding that the objection of the Banks to Fulcrum's request for assessment of its professional fees from the

secured collateral held by Manufacturers Hanover was not barred by the doctrine of collateral estoppel and *res judicata.*
II. Whether the bankruptcy court erred in determining that Fulcrum lacks standing to assert a claim under 11 U.S.C.A. § 506(c) for assessment of its professional fees against the collateral of the Banks.

Bankruptcy court properly concluded that the objection by the Banks to Fulcrum's request for assessment of its personal fees from the secured collateral held by Manufacturers Hanover was not barred by the doctrine of collateral estoppel and *res judicata.* In its December 5, 1989, order the bankruptcy court awarded Fulcrum professional fees of $75,296.31; however, the order never addressed the source to be used to pay the award. Thus, that issue is properly before the court. The court now turns to the second issue.

Fulcrum seeks to have this court reverse the bankruptcy court's determination that it lacks standing to bring a claim under section 506 to recover its fee award. The court's first step in determining whether Fulcrum has standing to bring a claim under section 506(c) is to examine the language of that section. Section 506(c) provides:

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

The Debtors and the Banks contend that "where the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). However, in a case where "the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters ..., the intention of the drafter, rather than the strict language, controls." *Id.* at 242, 109 S.Ct. at 1031, 103 L.Ed.2d at 299 (*quoting Griffen v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

The legislative history of section 506(c) provides:

Any time the trustee or debtor in possession expends money to provide for the reasonable and necessary cost and expenses of preserving or disposing of a secured creditor's collateral, the trustee or debtor in possession is entitled to recover such expenses from the secured party or from the property securing an allowed secured claim held by such party.

124 Cong.Rec.H. 11,095, 11,111, 11,112 (Sept. 28, 1978), *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 6436, 6451. In the court's considered opinion, the purpose of section 506(c) is to shift the cost of preserving or disposing of a secured creditor's collateral from the estate to the secured party. In the instant case, the bankruptcy court determined that Fulcrum was entitled to $75,296.31 in professional fees for the services rendered in arranging for the sale of Sero's assets. Since Sero's assets were the collateral of the Banks, the proceeds of the sale went to the Banks. The Banks refused Fulcrum's demand for the payment of its fees from the collateral. There are no other assets now in the estate from which Fulcrum can be paid and Sero refuses to pursue a recovery under section 506(c). Thus, even though Fulcrum has rendered services and expended sums in disposing of Sero's assets and the Banks' collateral, the latter now contend that Fulcrum should bear the cost of a benefit conferred on the Banks. In the court's judgment such a result is at odds with the intentions of the drafters of section 506(c).

■ The courts which have addressed the issue of standing by someone other than the trustee or debtor in possession to bring a claim under section 506(c) are split. Some courts, including the bankruptcy court in this instance, have followed a strict interpretation of § 506(c) allowing only the trustee or the debtor in possession to bring the action. *See, e.g., In re Codesco, Inc.,* 18 B.R. 225 (Bankr.S.D.N.Y.1982); *In re Fabian,* 46 B.R. 139 (Bankr.E.D.Pa.1985); *In re Interstate Motor Freight Systems*

*IMFS, Inc.*, 71 B.R. 741 (Bankr.W.D.Mich. 1987).

However, in the court's considered judgment, "the better rule is to allow the claimant to directly apply for administrative expenses under 11 U.S.C.A. § 506(c) where the claimant can demonstrate that the debtor in possession or trustee will not proceed with the application itself." *In re DLS Industries, Inc.*, 71 B.R. 679, 681 (Bankr.D. Minn.1987); *In re McKeesport Steel Castings Company*, 799 F.2d 91 (3rd Cir.1986) (The rule that individual creditors cannot act in lieu of the trustee is often breached when sufficient reason exists to permit the breach).

 In the court's considered judgment, "a secured creditor who received a direct benefit from the rendition of services or provision of goods by an administrative claimant of the estate should have the collateral charged for such benefit...." *In re World Wines, Ltd.*, 77 B.R. 653, 658 n. 4 (Bankr.N.D.Ill.1987) (*citing* 3 Collier on Bankruptcy ¶ 506.6 at 56). *See also, In re International Club Enterprises, Inc.*, 105 B.R. 190 (Bankr.D.R.I.1989). Whether a particular administrative claimant has standing will turn on the facts of each specific case. A claimant must be able to demonstrate an entitlement to reimbursement for sums expended in preserving or disposing of a secured creditor's collateral and that the trustee or debtor in possession refuses to proceed with the application itself.

 In the instant case, in its order of December 5, 1989, the bankruptcy court found that "Fulcrum's services substantially benefited Sero and their creditors. Fulcrum helped keep the 'fires hot,' which resulted in a sale of Sero's assets." It is also uncontroverted that Sero and the Banks were aware of Fulcrum's efforts in arranging a sale of Sero's assets. In fact, a representative of Fulcrum appeared at the negotiation sessions. In spite of the services rendered by Fulcrum, Sero has opposed all attempts by Fulcrum to receive compensation for the services it rendered in bringing together Sero and Brynwood. Thus, Fulcrum is not in a position to request that Sero, as debtor in possession, make application under section 506(c) to recover from the Banks what the bankruptcy court determined to be the reasonable fee for the services rendered in arranging for the disposition of the Banks' collateral. Under the circumstances of this case, the court finds that Fulcrum does have standing to seek a recovery of its fees under section 506(c).

Consequently, the decision of the bankruptcy court that Fulcrum lacks standing to assert a claim for the recovery of its administrative fees in disposing of the Banks' collateral is REVERSED and REMANDED to the bankruptcy court for further proceedings.

SO ORDERED.