**In re L. Bryson MOODY, Debtor.**

**First Georgia Bank, Plaintiff,**

**v.**

**FNB South f/k/a First National Bank of Alma,**

**and**

**Jimmy J. Boatwright, Defendants.**

**Bankruptcy No. 00–50114–JDW.**
**Adversary No. 01–5014–JDW.**

United States Bankruptcy Court,
S.D. Georgia,
Waycross Division.

April 13, 2001.

R. Michael Souther, Brunswick, Georgia, for plaintiff. .

Jimmy J. Boatwright, Waycross, Georgia, for defendant.

### MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Complaint filed by First Georgia Bank ("Plaintiff") against FNB South and Jimmy J. Boatwright ("Defendants"). The Court held an emergency hearing on March 29, 2001. After considering the pleadings, evidence and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtor incurred a debt of over $515,000 by executing five promissory notes to Defendant FNB South. Three tracts of land in Bacon County, Georgia, owned by Debtor were used as security for those notes, and Defendant FNB South held the notes. Thereafter, Debtor executed a promissory note in favor of Plaintiff in the amount of $345,500. This debt was secured by a secondary lien on the three tracts of land in Bacon County, Georgia, owned by Debtor. Subsequently, Debtor incurred a third debt, secured by the same properties, thereby creating a third lien holder for the properties. The fair market value of the property is $657,000.

On or about January 31, 2000, Defendant Boatwright sent a letter to Debtor stating that Defendant FNB South would be foreclosing on the three tracts of land owned by Debtor and would be assessing attorney fees in the amount of 15% of the outstanding principal and interest of $515,000 pursuant to Ga.Code Ann. § 13–1–11 if the debt was not paid within 10 days. On February 4, 2000, within one day of receiving the demand letter, Debtor filed for bankruptcy.

On December 1, 2000, the Court granted Defendant FNB South relief from the automatic stay to pursue foreclosure of the three tracts of land securing the debt owed to them. On December 18, 2000, the Chapter 7 Trustee abandoned her interest in the three tracts of land. On March 13, 2001, Debtor's discharge was granted. Defendant FNB South advertised the properties for sale during March with the intention of offering the properties for sale to the highest bidder on the first Tuesday in April, in accordance with Georgia law which allows non-judicial foreclosure. When it learned of Defendant FNB South's intentions, Plaintiff tried to negotiate a purchase of Defendant FNB South's mortgage rights to protect its secondary mortgage position. Negotiations failed due to Defendant FNB South's insistence on the right to increase the principal amount of the debt secured by the mortgage by the 15% statutory attorney fees alleged by Defendants to be authorized by Ga.Code Ann. § 13–1–11. Efforts by Plaintiff to negotiate a reduction in the amount were unsuccessful.

On March 19, 2001, Plaintiff filed a complaint with this Court alleging that Defendant FNB South's insistence on attorney fees under Ga.Code Ann. § 13–1–11 is improper, that Section 506(b) of the Bankruptcy Code preempts the Georgia law, and that the foreclosure sale with such attorney fees included in the claim of indebtedness will cause immediate and irreparable loss, damage, or injury to Plaintiff if not restrained and enjoined. This Court held an emergency hearing on March 29, 2001. There, Plaintiff argued that allowing Defendants to receive 15% of the principal and interest in attorney fees instead of reasonable attorney fees required under Section 506(b) would cause a loss to Plaintiff as the secondary lien holder on the three tracts of land. Defendants argued that the bankruptcy court no longer had jurisdiction over the matter and could not, therefore, apply Section 506(b). After the hearing, the Court ordered the foreclosure sale of the three tracts of land temporarily enjoined and took the case under advisement. A written order providing for the injunction was entered on April 2, 2001, the day before the foreclosure sale. In compliance with the order, Defendant FNB South withdrew the properties from foreclosure.

### Conclusions of Law

■ Section 1334 of the United States Code confers jurisdiction in bankruptcy matters. Subsection (a) states that "Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a)(West 1994). Subsection (b) provides that "Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original, but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b)(West 1994). Thereafter, a district court may refer such cases to the bankruptcy judges of its district pursuant to 28 U.S.C. § 157(a).[1]. As such, Section 1334 creates two distinct categories of bankruptcy proceedings: "(1) core proceedings, over which the bankruptcy courts may exercise full judicial power; (2) non-core proceedings over which the bank-

---

**1.** Section 157(a) of the United States Code states:
(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
28 U.S.C. § 157(a)(West 1994).

ruptcy courts may exercise only limited power." *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 787 (11th Cir.1990). A jurisdictional analysis must, therefore, involve a two-step inquiry. First, it must be determined whether the district court has jurisdiction over the proceeding under Section 1334's grant of jurisdiction in proceedings "related to" bankruptcy cases. Second, if the proceeding is found to relate to a bankruptcy case, it must be determined whether the proceeding is a core or non-core matter. *Id.*

The Eleventh Circuit Court of Appeals articulated the test to determine whether a matter is sufficiently related to a bankruptcy case to confer jurisdiction on the district court in *Miller. Id.* at 788. " 'The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.' " *Id.* (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984)).

Debtor owed Defendant FNB South approximately $515,000, owed Plaintiff approximately $345,000, and owed a third creditor approximately $300,000. All of these debts were secured by the same three tracts of land, with a fair market value of $657,000. Consequently, there was no equity in the properties for use in the administration of Debtor's bankruptcy estate, and as a result, Trustee abandoned any interest she had in the three tracts of land located in Bacon County, Georgia on December 18, 2000.

The effect of abandonment by a trustee is to divest the bankruptcy estate of control over the abandoned property and to revest title in the debtor. *In re Argiannis*, 156 B.R. 683, 688 (Bankr. M.D.Fla.1993); *In re Caron*, 50 B.R. 27 (Bankr.N.D.Ga.1984). In doing so, the property becomes part of the debtor's non-bankruptcy estate, just as if no bankruptcy had occurred. *Id.* Thereafter, the property is available to the debtor or creditors of the debtor to the extent that they have interest in the property under state law. *In re R–B–Co., Inc. of Bossier*, 59 B.R. 43, 45 (Bankr.W.D.La.1986). Accordingly, when Trustee abandoned the properties, the land was revested in Debtor and any creditors were free to pursue their interests in the land. Defendant FNB South as a primary lien holder was then free to begin foreclosure action as to the properties seeking accompanying attorney fees, and any such action would have no impact on the administration of the bankrupt estate.

As to whether Debtor had any remaining interest in the properties such that an action disputing the foreclosure sale would affect his rights, liabilities, options, or freedom of action, Debtor's debts were discharged on March 13, 2001. This discharge included the debts owed to Defendant FNB South and Plaintiff, leaving Defendant FNB South and Plaintiff with the three tracts of land as their only means of recouping their losses. Further, there was no equity in the property for Debtor to protect by way of exemption. Because Trustee abandoned the property which is the subject of this dispute and because Debtor has no remaining interest in the property, this proceeding does not impact either the debtor or the bankrupt estate.

Plaintiff seeks to limit Defendant FNB South to reasonable attorney fees under Section 506(b) of the Bankruptcy Code, rather than the percentage fee allowed under Georgia state law, Ga.Code Ann. § 13–1–11.[2] Plaintiff's motivation is to recoup as much as possible from the foreclosure sale of the three tracts of land to which it holds a secondary lien. However, Plaintiff has failed to demonstrate how this action relates to Debtor's Chapter 7 bankruptcy. Debtor, having received a discharge, is not affected if Plaintiff recoups more or less funds and the outcome of the action will not alter Debtor's rights, liabilities, options, or freedom of action. Accordingly, the action does not relate to a bankruptcy case.

2.  Section 506(b) states:
    (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.
11 U.S.C. § 506(b)(West 1994).
    Ga.Code Ann. § 13–1–11 states in pertinent part:
    (a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectible as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to the following· provisions—
    (1) If such note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness;
    (2) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first

The Western District of Virginia addressed a similar issue in *In re Jelco Construction*, 108 B.R. 113, 114 (Bankr. W.D.Va.1989). There, the court had to determine whether the trustee of a deed of trust could seek commissions for the sale of a debtor's property under Section 506(b). In making this determination, the court noted that because the bankruptcy trustee had not abandoned the property, it retained jurisdiction to determine the Section 506(b) claim. *See id.* Here, because Trustee has abandoned the properties and Debtor has no interest in the properties, the Court finds that it does not retain jurisdiction to determine the Section 506(b) claim.[3]

$500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00;
    (3) The holder of the note or other evidence of indebtedness or his attorney at law shall, after maturity of the obligation, notify in writing the maker, endorser, or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party sought to be held on said obligation has ten days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, endorser, or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice specified in this paragraph shall be the equivalent of such notice.
Ga.Code Ann. § 13–1–11.

3.  The Court is aware of the conflicting authority that exists as to whether a court retains jurisdiction to determine a claim under Section 506(c) of the Bankruptcy Code where a claimant files a complaint against a creditor. *In re Parque Forestal*, 949 F.2d 504 (1st Cir.1991)(finding claimant had standing);

■ Having determined that this Court lacks jurisdiction over Plaintiff's case, the only remaining issue before the Court is whether costs should be awarded to Defendant FNB South in association with having to forego its foreclosure action in compliance with the Court's injunction. Because the relief sought by Plaintiff was a form of equitable relief, that being an injunction, the Court must determine whether costs in association with such relief should be awarded under equitable principles. As such, the determination requires an examination of the substance of each parties' claim.[4]

Plaintiff claims that Defendants are only entitled to reasonable attorney fees under Section 506(b) of the Bankruptcy Code, instead of the 15% of the principal debt that Defendants are seeking under Ga. Code Ann. § 13–1–11. In support of this claim, one of Plaintiff's arguments is that Defendants' right to attorney fees under Ga.Code Ann. § 13–1–11 did not vest before bankruptcy and therefore, Defendants should not receive the benefits of that provision of state law.

Here, Defendants sent a letter to Debtor on January 31, 2000, which was received by Debtor on February 3, 2000. Debtor filed for bankruptcy the next day. Ga. Code Ann. § 13–1–11 requires that a letter be sent to the debtor by or through an attorney, notifying the debtor that the obligation to pay the debt will be enforced, that the attorney fee provisions along with his debt shall be enforced against him, and that he has 10 days from receipt of such notice to pay the debt before he incurs the additional attorney fee obligation, established by state law as 15% of the debt. *See supra note 2.* Because the 10 days had not expired before Debtor filed for bankruptcy, the right to attorney fees did not vest. *Bargas v. Rice (In re Rice)*, 82 B.R. 623, 626–627 (Bankr.S.D.Ga.1987); *see generally Mills v. East Side Investors (In re East Side Investors)*, 694 F.2d 242 (11th Cir.1983).

When a debtor files for bankruptcy, the filing operates to stay any actions against the debtor under Section 362 of the Bankruptcy Code.[5] As such, Defendants' actions in enforcing the debt obligation and seek-

---

*New Orleans Pub. Serv., Inc. v. First Fed.Sav. & Loan Ass'n of Warner Robins (In re Delta Towers, Ltd.)*, 924 F.2d 74 (5th Cir.1991)(noting that strict interpretation of Section 506(c) could create a windfall benefit to secured creditor); *Fulcrum Int'l, Ltd. v. Saybrook Mfg. Co.*, 124 B.R. 141 (M.D.Ga.1991) (better rule to allow claimant standing where trustee will not proceed); cf. *In re Dakota Lay'd Eggs*, 68 B.R. 975 (Bankr.D.N.D.1987)(finding only the trustee has standing); *In re Wyckoff*, 52 B.R. 164 (Bankr.W.D.Mich.1985)(strictly interpreting Section 506(c) with trustee being the only party with standing); *In re Fabian*, 46 B.R. 139 (Bankr.E.D.Pa.1985)(finding trustee to be only party with standing). Section 506(c) provides that a trustee may recover reasonable, necessary costs and expenses for preserving or disposing of property. The Court is also aware of the *Geller* case, where that court found a lessor had derivative standing to bring a Section 506(c) claim against a creditor for costs incurred in storing and pre-

serving property that had been abandoned by the trustee. *Geller v. Int'l Club Enter., Inc. (In re Int'l Club Enter., Inc.)*, 105 B.R. 190 (Bankr.D.R.I.1989). However, the Court does not find these cases to be analogous to the case at hand.

4. Plaintiff was advised of the possibility that costs might be imposed if the relief sought was not awarded. Plaintiff agreed to comply with an order of the Court requiring payment of such costs. Had Plaintiff not been willing to pay such costs, the request for injunction might have been denied.

5. Section 362(a) of the Code states in pertinent part:

  (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title … operates as a stay, applicable to all entities[.]

  11 U.S.C. § 362(a) (West 1994).

ing attorney fees were stayed on February 4, 2000, by Debtor's filing, approximately 9 days before Debtor was required to pay the debt obligation or incur attorney fees. While the Court recognizes that the grant of discharge to a debtor or the grant of relief from the stay to a creditor can effectively restart the clock as to certain rights pursuant to Section 108 of the Bankruptcy Code, the Court does not find Section 108 applicable in the context of the 10–day notice letter for attorney fees.[6]

Section 108(b) of the Bankruptcy Code defines the actions that a trustee may take and the time within which a trustee may take those actions. Because the focus of the 10–day letter is on the debtor and what actions the debtor must take to avoid incurring any further debt in the form of attorney fees, the Court does not find Section 108(b) applicable to the 10–day letter. As to whether Section 108(c) applies, the key language of that subsection is that extensions of time apply to civil actions in courts other than the bankruptcy court, that are commenced or continued based on "a claim against a debtor". To say that the 10–day letter "fixes a period for commencing or continuing a civil action in a court … on a claim against the debtor"

would be an inaccurate characterization. The 10–day letter imposes a deadline within which the debtor must act in order to avoid increasing a debt obligation. Therefore, there is no claim against the debtor for attorney fees until the deadline passes without action from the debtor. Here, Debtor took action by filing a bankruptcy case within such time, so Debtor did not incur a debt obligation, and Defendants did not have a claim against Debtor for the attorney fees requested that would fall under Section 108(c). To suggest that the unexpired portion of the 10–day period would run following some bankruptcy event like stay relief, abandonment, or discharge is impractical, artificial and contrary to the purpose and spirit of the state law provision intended to benefit the debtor rather than create a windfall for the creditor.

Accordingly, the Court finds that Defendants' right to attorney fees did not vest, and Plaintiff's claim has merit. This determination may appear to be contrary to the Court's decision that no jurisdiction exists for asserting this claim. Had no injunction been issued, there would not be reason to address the 10–day, attorney

---

**6.** Section 108 of the Bankruptcy Code states in pertinent part:

(b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

(c) Except as provided in section 524 of this title, if nonbankruptcy applicable law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against a debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201 or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C. § 108 (West 1994).

fees question. The issue could have been raised in a state court proceeding where jurisdiction would be unquestionable. The decision of the Court on this point does not bind the parties, because the Court has no jurisdiction to impose such a result. The purpose of the decision is not to answer the question for the parties, one of whom says correctly that the Court has no jurisdiction to answer the question. The purpose of the decision is instead to determine whether equity requires that Plaintiff pay Defendant FNB South's costs incurred because of the issuance of the injunction that prevented the foreclosure. Defendant FNB South lost its advertising expenditures and interest on the debt, which would have been paid from the foreclosure proceeds. As interest continues to be incurred on the debt, the property may not enjoy a corresponding increase in fair market value.

The injunction was issued because the matter of the Court's jurisdiction to grant the relief requested by Plaintiff was unclear. Having resolved the question of jurisdiction against Plaintiff, it might appear that costs should be imposed against Plaintiff. However, the decision to impose costs is just as much an equitable matter as the decision to grant the injunction in the first instance. Defendants' position asserting the right to increase the claim of indebtedness by 15%, effectively eliminating any possibility that Plaintiff will receive any proceeds for the foreclosure, is groundless and contrary to law. Defendants have not cited any authority which supports their claim.

It appears now that Plaintiff should have gone to a state court for relief. However, Plaintiff's allegation that the Court had jurisdiction under Section 506(b) was a reasonable, albeit unsuccessful, assertion. If the 10–day notice had matured prior to the filing of the case, costs would have most assuredly been assessed. The evidence, however, shows that the notice had not matured, and that Defendants did not have a right to increase the balance of the debt by 15% attorney fees. Given this conclusion by the Court, an award of costs to Defendant FNB South would further the injustice imposed on Plaintiff by Defendant FNB South's conduct. In order to have the "clean hands" required of one who would seek equitable relief, FNB South would have to have demonstrated that its position was reasonable, even if it were not accepted by the court. FNB has made no such showing. Under equitable principles, the Court will not award costs to Defendants in association with the injunction.

Defendant FNB South has been authorized to advertise the properties during April for a May sale. No further injunction will be imposed by this Court. If Defendants persist in alleging that attorney fees of 15% have vested, Plaintiff will have to seek relief from a state court, or from the District Court by way of appeal from this order.